**Phoebe WELCH, Appellant,**

v.

**The STATE of Texas.**

**No. 875–01.**

Court of Criminal Appeals of Texas.

Sept. 18, 2002.

Randy Schaffer, Houston, for Appellant.

Eric Willard, Asst. Dist. Atty., Plainview, Matthew Paul, State's Atty., for State.

## *OPINION*

KEASLER, J., delivered the unanimous opinion of the Court.

After pulling Phoebe Welch over for speeding, Officer Ronald Mann asked her permission to search her truck. While never explicitly refusing, she never consented. She was arrested on an outstanding warrant and requested that the car be turned over to her companion, a passenger in the truck. The passenger, Geneva "Ginger" Hirsch, subsequently consented to a search of the truck. We must determine whether that consent was valid. We conclude that it was.

### I. Facts

Phoebe Welch was speeding through west Texas at 72 mph at 1:00 a.m. when DPS Officer Mann signaled her to pull over. Welch's friend Hirsch was a passenger in Welch's truck. A resident of Ruidoso, New Mexico, Welch was on her way to Lubbock, but first planned to drop off Hirsch at her boyfriend Clint Wright's house in Hart. The two were stopped on FM 145 approximately 10 miles south of Dimmitt and 12 miles outside Hart.

Upon pulling her over, Officer Mann discovered that Welch had an outstanding warrant. He brought Welch back to the squad car, where the two waited to see if the warrant was valid. During this time period, Mann repeatedly asked Welch for permission to search the truck, and she repeatedly dodged the question.[1] While she never explicitly said "no," she also did not grant consent for a search. Instead, she requested that, if she was going to be arrested, the truck be given to Hirsch. Once the warrant was confirmed, Welch repeated this request, even though Mann warned her that if she gave the truck to Hirsch, Hirsch would be "responsible for everything in it."

Mann then approached Hirsch, told her that Welch was being arrested, gave her the keys to the truck, and asked for consent to search. Hirsch gave consent. In the cab of the truck, Mann found two burnt marijuana cigarettes and in Welch's purse he found a vial of methamphetamine. In the bed of the truck, inside a green military-style bag, he found a methamphetamine recipe and various ingredients and supplies used to make methamphetamine.

### II. Procedural History

The State indicted Welch for possessing between four and two hundred grams of methamphetamine with intent to manufacture it. Welch unsuccessfully moved to suppress the evidence. A jury found Welch guilty of possessing between one

---

1. *See* Appendix A.

■

and four grams of methamphetamine and sentenced her to eight years' imprisonment.

On appeal, Welch argued that the trial court erred in denying her suppression motion. The appellate court disagreed, concluding that the judge had evidence before him demonstrating that Welch chose to release the truck to Hirsch and that she placed no restrictions on Hirsch's custody.[2] The court also noted that there was nothing in the record indicating that Hirsch was aware that Welch had refused to give consent for the search.[3] The appellate court concluded that Hirsch's consent was valid and affirmed Welch's conviction.[4] We granted Welch's petition to decide "whether a passenger's consent to search a vehicle is valid where the owner has refused to consent to a search."

### III. Analysis

In her suppression motion, and in the Court of Appeals, Welch mentioned both the Fourth Amendment to the U.S. Constitution and Article I, § 9, of the Texas Constitution. The Court of Appeals' opinion mentioned both authorities but made no distinction between the two in its analysis. Welch does not specify in her petition whether she is basing her argument on the Fourth Amendment or Art. I, § 9. We limit our analysis to the Fourth Amendment.[5]

■ The Fourth Amendment prohibits unreasonable searches and seizures.[6] Searches conducted without a warrant are unreasonable *per se* under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions.[7] One recognized exception is when a voluntary consent to search has been given.[8] Usually, that consent is obtained from the defendant.

A less common variation of the standard consent case is that of third-party consent. In *United States v. Matlock*,[9] the Supreme Court stated that "the consent of one who possesses common authority over premises or effects is valid as against the absent, non-consenting person with whom that authority is shared." The Court explained that "[t]he authority which justifies the third-party consent . . . rests . . . on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."[10] In line with *Matlock*, we have stated that, in order for a third person to validly consent to a search, that person must have equal control and equal use of the property

---

2. *Welch v. State*, No. 07–00–0294–CR, slip op. at 6, 2001 WL 417180 (Tex.App.-Amarillo, delivered April 24, 2001) (not designated for publication).

3. *Id.*

4. *Id.* at 7.

5. *See Heitman v. State*, 815 S.W.2d 681, 690–91 n. 23 (Tex.Crim.App.1991) (briefs asserting rights under Texas Constitution inadequate if they do not provide argument and authority in support).

6. U.S. Const. Amend. IV; *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998).

7. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

8. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

9. 415 U.S. 164, 170, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

10. *Id.* at 171 n. 7, 94 S.Ct. 988.

searched.[11] And we have recently emphasized that the third party's legal property interest is not dispositive in determining whether he has the authority to consent to a search, saying that "common authority derives from the mutual use of the property, not the ownership or lack thereof." [12]

■■■ The State has the burden of establishing common authority.[13] In determining whether a search was justified, the court looks to the totality of the circumstances surrounding the conduct.[14] We review the trial court's ruling for an abuse of discretion, giving "almost total deference to a trial court's determination of historical facts" and reviewing *de novo* the court's application of the law of search and seizure.[15] In this case, the trial court did not make explicit findings of historical fact, so we review the evidence in a light most favorable to the trial court's ruling.[16]

### Third–Party Consent

In determining whether Hirsch's consent authorized the search, we must determine whether Hirsch had joint access or control over the truck for most purposes, so that it would be reasonable to conclude that Hirsch had the right to permit a search of the truck and that Welch assumed the risk that Hirsch might do so.[17]

■■ Initially, when Welch and Hirsch were driving down the road, the two friends had joint access to the truck but not joint control. Welch, as both owner and driver, had control over the vehicle at that time. While Hirsch may have had control over certain portions of the truck, such as her window or her seat, she did not have equal control over the vehicle for most purposes.

But the dynamic changed soon thereafter. Mann pulled them over and escorted Welch to the police car. Welch asked that the truck be given to Hirsch, and Mann gave the keys to Hirsch. At that point, Hirsch's access to the truck continued, and her control over it increased dramatically. She was no longer just a passenger; instead, her status rose to one having joint access and control over the truck for most purposes. She was able to drive the truck, to freely examine its contents, and to allow someone else to do so, including a police officer. Welch assumed some risk in giving the truck to Hirsch, particularly given Mann's warning that Hirsch would be responsible for the contents of the truck.

Welch sets forth a number of arguments contesting the validity of Hirsch's consent, which we will address in turn.

### *Inferior Privacy Interest*

First, Welch contends that, even if Hirsch had some control over the truck at that point, her control was still less than Welch's. Essentially, Welch claims that her ownership of the truck gave her a superior privacy interest in the truck, rendering Hirsch's consent invalid in the face

---

11. *Becknell v. State,* 720 S.W.2d 526, 528 (Tex.Crim.App.1986); *see also Collins v. State,* 548 S.W.2d 368, 375 (Tex.Crim.App.1976), *cert. denied,* 430 U.S. 959, 97 S.Ct. 1611, 51 L.Ed.2d 811 (1977).

12. *Maxwell v. State,* 73 S.W.3d 278, 281 (Tex. Crim.App.2002).

13. *Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

14. *Stephenson v. State,* 494 S.W.2d 900, 903 (Tex.Crim.App.1973).

15. *Guzman v. State,* 955 S.W.2d 85, 88–89 (Tex.Crim.App.1997).

16. *Carmouche v. State,* 10 S.W.3d 323, 327–28 (Tex.Crim.App.2000).

17. *See Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. 988.

of Welch's refusal. We disagree. First, Welch assumes that Welch's ownership alone is sufficient to render Hirsch's interest inferior to Welch's. But *Matlock* instructs us that property rights are not dispositive in determining whether a third-party has joint access and control.[18]

The relevant inquiry under *Matlock* is not whether Welch possessed a superior privacy interest to Hirsch's. The relevant inquiry is whether Hirsch had joint access and control over the truck for most purposes at the time she granted consent, and whether Welch assumed the risk in giving the truck to Hirsch that Hirsch would consent to a search. The answer to both questions is "yes," even though Welch owned the truck and did not consent to a search.

Second, the videotape does not support Welch's characterization that she "refused" consent. Her comments to Mann were equivocal and confusing.[19] While she did not grant consent, neither did she refuse consent. A reasonable interpretation is that she sought to avoid answering the question by giving the truck to Hirsch. Welch's failure to refuse consent diminishes the force of her argument that her refusal of consent should prevail over Hirsch's grant.

Additionally, the cases on which Welch relies are unpersuasive. She relies primarily on *United States v. Impink*, in which the Ninth Circuit stated that "[p]olice should rarely seek consent from third parties who possess such limited rights of access."[20] The *Impink* court also stated that "when the police intentionally bypass a suspect who is present and known by them to possess a superior privacy interest, the validity of third party consent is less certain."[21]

But *Impink* involved a landlord granting consent to search premises when the tenant was present and objected. While a landlord has access to his tenant's property for some purposes, he certainly does not have mutual access and control for most purposes. Nor can it be reasonably concluded that a tenant assumes the risk that his landlord will consent to a government search of his home simply by signing a lease. The facts of *Impink* are dissimilar to those we face today. Indeed, even the Ninth Circuit itself recognizes the difference.[22]

More importantly, *Impink*'s rationale is based on the notion that *Matlock* does not apply when a person with a superior privacy interest is present and objecting to the search. According to Impink, *Matlock* is limited to situations in which the objecting party is absent.[23] But this theory has been persuasively criticized. The Colorado Supreme Court explains that "[t]he Supreme Court's holding in *Matlock* did not depend on the defendant's absence at the time of the search, but focused on whether or not the permission to search was obtained from a third party who possessed

---

**18.** *See Maxwell,* 73 S.W.3d at 281; *Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. 988.

**19.** *See* Appendix A.

**20.** 728 F.2d 1228, 1233 (9th Cir.1984).

**21.** *Impink,* 728 F.2d at 1234.

**22.** *United States v. Kelley,* 953 F.2d 562, 569 (9th Cir.1992) (explaining that *Impink* is a "limited purpose" case in which the purport-

ed consent was rejected "because a person with limited purpose access lacks the 'joint access and control for most purposes' necessary under ... *Matlock.*")

**23.** *See also Johnson v. State,* 905 P.2d 818, 820–21 (Okla.Crim.App.1995); *State v. Leach,* 113 Wash.2d 735, 782 P.2d 1035 (Wash. 1989); *Silva v. State,* 344 So.2d 559 (Fla. 1977).

'common authority' over the premises." [24] That court specifically distinguished the reasoning of *Silva* and *Leach*, cases with holdings similar to *Impink*, noting that "[t]hese cases fail to recognize that *Matlock* did not depend on the defendant's absence because the defendant there had just been arrested in the front yard of the residence when the officers procured the third person's consent to search." [25]

We agree with the Colorado Supreme Court that, given *Matlock's* facts, a defendant's mere absence or presence is irrelevant to the analysis. A defendant's privacy interest relative to the third party is not controlling. What matters is whether the third party has mutual access to and control over the property for most purposes. We decline to follow *Impink*.

The other cases on which Welch relies are distinguishable. She cites *Stoner v. California*[26] for the general proposition that a person with an inferior privacy interest cannot grant consent to a search when a person with a superior privacy interest has refused. But *Stoner* was decided ten years before *Matlock* and did not apply *Matlock's* mutual-access-and-control test. Moreover, *Stoner* involved a hotel clerk granting consent to search a guest's room over the guest's refusal. Even under *Matlock's* test, it would be unusual for a hotel clerk to have access and control over a hotel room that is equal to the guest's. The *Matlock* court itself recognized as much by citing *Stoner* as an example of insufficient third-party consent.[27] *Stoner* does not impact our decision.

Welch also cites *Lucero v. Donovan*,[28] another pre-*Matlock* case, but that case involved a consent to search obtained from a "welcome visitor" [29] when the resident of the home objected. Again, it cannot be said that a visitor has mutual access and control over property for most purposes. When Hirsch and Welch were driving down the road, Hirsch's status as passenger was similar to that of a visitor in a home. Her status rose beyond that, however, once Welch asked that she be given the truck and Mann gave her the keys. *Lucero* does not control the issue before us today.

### Incomplete or Limited Bailment

Welch also argues that Hirsch's consent was invalid because there was not a complete bailment in this case, since Hirsch never accepted the bailment. But it makes no difference whether a complete bailment existed or not. Since the relevant question is whether Hirsch had mutual access and control over the vehicle for most purposes, the absence of a bailment would not render Hirsch's consent invalid *per se*. It would only be a factor to consider. We conclude that Hirsch did have mutual access and control, once Welch requested that Hirsch be given the truck and Mann gave Hirsch the keys.

Moreover, even if the existence of a complete bailment were necessary, Welch's argument would be unpersuasive. She contends that the bailment was incomplete because Mann had not yet released the

**24.** *People v. Sanders,* 904 P.2d 1311, 1314 (Colo.1995). *See also State v. Douglas,* 204 N.J.Super. 265, 277, 498 A.2d 364, 370 (N.J.Super.Ct.App.Div.1985); *United States v. Hendrix,* 194 U.S.App. D.C. 76, 595 F.2d 883, 885 (D.C.Cir.1979); *United States v. Sumlin,* 567 F.2d 684, 687–88 (6th Cir.1977).

**25.** *Sanders,* 904 P.2d at 1314 n. 5.

**26.** 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).

**27.** *Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. 988.

**28.** 354 F.2d 16 (9th Cir.1965).

**29.** *Id.* at 21.

truck to Hirsch, such as by giving her the keys. But Hirsch testified at trial that Mann did give her the keys before asking her for consent to search. So even under Welch's argument that a complete bailment was required, there was evidence supporting a conclusion that the bailment was complete.

Welch next assumes for the sake of argument that a bailment existed and then claims that the bailment was for a limited purpose, that of driving the truck to Wright's house. She argues that a bailment for a limited purpose does not confer on the bailee authority to consent to a search. She relies on *State v. Farrell*[30] and Professor LaFave's Search and Seizure treatise.[31]

Once again, Welch's arguments and authority are unpersuasive. In *Farrell*, the defendant took his car to the shop to have a dent repaired. The police later obtained consent from the shop's employee to take the car to police headquarters to inspect it. The Rhode Island Supreme Court analyzed the case under *Matlock* and concluded that the shop employee did not have common authority over the vehicle with the defendant.[32] The court did not mention any type of bailment theory. *Farrell's* conclusion regarding an auto shop employee's access and control over his customers' vehicles does not influence our decision concerning Hirsch's common authority over Welch's truck.

Welch also cites *Anderson v. United States*[33] for the proposition that an owner's decision whether to consent is binding on a bailee. But once again, *Anderson* was a pre-*Matlock* case and did not apply *Matlock's* mutual-access-and-control test. Moreover, *Anderson's* actual holding supports our conclusion, not Welch's. The *Anderson* court concluded that "when two people have a property interest in the property to be searched, the waiver of the personal Fourth Amendment rights of one party may act as a binding waiver of the personal rights of the other party."[34] *Anderson* does not help Welch.

Welch's reliance on Professor LaFave's treatise is also unpersuasive. First, LaFave explains that "[o]f obvious importance" in a bailment analysis is "the extent to which the bailor made efforts to secure, even as against the bailee, the privacy of his effects."[35] Welch's argument fails under this test because there is no evidence that Welch made any effort at all to secure the privacy of her belongings as against Hirsch.

LaFave also addresses automobile bailments specifically and notes that "[w]here possession of the car was given on the understanding that the bailee would subject it to general use, driving it about for his own purposes, then the bailee may give effective consent to a search of those portions of the car which he could be expected to make use of."[36] Welch argues that Hirsch did not have authority to drive the truck "about for her own purposes" but rather only to drive to Wright's house. But Welch exaggerates the record. In fact, Welch repeatedly asked Mann that Hirsch be given the truck without expressing any limitations. She stated that Hirsch could "be responsible for the

---

**30.** 443 A.2d 438 (R.I.1982).

**31.** 3 W. LaFave, Search and Seizure § 8.6(a) (3d ed.1996).

**32.** *Farrell*, 443 A.2d at 441–42.

**33.** 399 F.2d 753 (10th Cir.1968).

**34.** *Id.* at 756.

**35.** 3 W. LaFave, Search and Seizure §§ 8.6(a) (3d ed.1996).

**36.** *Id.* (and cases cited therein).

truck," "take the truck to wherever she's going," and "just drive it off." At the end of the exchange, she mentioned Wright's house, but not in the context of limiting any bailment-only in the context of Welch being able to locate Hirsch when she was given her phone call from jail.

Finally, even if a bailment existed, the relevant inquiry, aside from Hirsch's mutual access and control, is whether Welch assumed the risk that Hirsch would consent to a search. She did. Welch may very well have given the truck to Hirsch in order to avoid having the truck searched, and it could be argued that her release of the truck to Hirsch included an implied limitation denying Hirsch the authority to grant consent. But without any express limitation, Welch assumed the risk that Hirsch would consent, particularly in light of Mann's warning that if she gave the truck to Hirsch, Hirsch would be responsible for everything in it. Furthermore, the record reflects that Hirsch could not have heard Welch's failure to consent. The videotape reveals that Welch's conversation with Mann occurred inside the squad car, in a regular volume, while Hirsch remained back at the truck, which was several car-lengths away. If Hirsch had heard Welch, Welch might be able to argue that the bailment contained a limitation regarding granting consent to a search and, therefore, Welch did not assume any risk. But without Hirsch's knowledge that Welch had not consented, we find no such limitation. These facts support a conclusion that Welch assumed the risk that Hirsch would consent to a search.

### Conclusion

■ Under *Matlock*, third-party consent is valid if the third party has mutual access and control over the property searched and if it can be said that the defendant assumed the risk that the third party would consent to a search. We hold this rule applies even when the defendant is present at the scene and does not consent to a search. Applying *Matlock*, we conclude that Hirsch had authority to consent to the search of Welch's truck. We affirm the Court of Appeals' judgment.

WOMACK, J., filed a concurring opinion.

### Appendix A[37]

Mann: What we're doing is we're waiting for a confirmation on the warrant out of Hereford.

Welch: I know that. But . . .

Mann: Uh . . .

Welch: I mean I just . . .

Mann: While we're waiting here . . .

Welch: . . . didn't want you to think that I was a, gosh . . .

Mann: . . . I'd like to ask you, okay, I'd like to ask you if you have any type of drugs or weapons or stolen property or anything illegal in the truck at this time. Do you have anything like that in the truck?

Welch: No, no I don't.

Mann: Do you mind if I search and look . . .

Welch: Well . . .

Mann: . . . through your truck . . .

Welch: . . . you know, right now . . .

Mann: . . . while we're waiting?

Welch: . . . am I being arrested? I don't know . . .

---

**37.** Excerpt from State's Exhibit 3, Videotape, beginning at 00:43:09.

Mann: You're going to for the warrant, if it's valid, yes ma'am.

Welch: Well, you know, if, uh, well, I have $500. To my knowledge, this has been paid.

Mann: That's fine.

Welch: Well, no.

Mann: I'm just saying, while we're waiting here for the warrant . . .

Welch: Well, you know . . .

Mann: . . . do you mind if I take a quick look through your truck?

Welch: . . . if I'm going to jail, right? Or whatever. Because listen, I did do this . . .

Mann: Right.

Welch: . . . to my knowledge it is clear, and I'm sure that's the way it's going to come back. But I'm trusting my boyfriend paid this, like he said. Right? I can't go a hundred percent because I didn't make the payment.

Mann: I wasn't, I wasn't there.

Welch: So, if that's gonna be the situation, if the worst is the worst, uh, uh, then she can be responsible for the truck, and just . . . ?

Mann: Well, what I'm asking you . . .

Welch: Well, if, uh, I'm gonna go to jail, then she's gonna just go ahead and take the truck to wherever she's going, and hopefully, uh, you know, uh, 'cause I don't want it towed away, so, you know, what, what is her condition?

Mann: That's what I'm asking right here, if I, if I can take a quick look through the truck.

Welch: Well, what's, what's Ginger's status?

Mann: Well, it's you, you were driving, that's why I'm asking you.

Welch: I know it, and I'm saying that, uh . . .

Mann: If she comes back clear, you know . . .

Welch: She can drive my truck away.

Mann: . . . she can go on and get the truck.

Welch: Well, she can just drive it off.

Mann: Right.

Welch: Well, you know . . .

Mann: So, can I go up there and look through the truck for a little bit while we're waiting on the confirmation? Or do you have anything there that you're hiding?

Welch: No, I really don't have anything in the truck. I really don't.

Mann: Okay . . .

Welch: Right?

Mann: That's what I want to make sure.

Welch: So, I just, well, you know what? I think I'd rather just wait for the whole confirmation because, uh, my favorite movie on TV is Top Cops and all of them, and, and, you know, I'm just a citizen, you, you have to say to me what, what you have to say . . .

Mann: That's fine. I mean, I, I just . . .

Welch: Ignorance is no excuse of the law.

Mann: I just want to make sure, I just want to, well, we're not talking about, we're not talking about no ignorance here, we're talking about . . .

Welch: No . . .

Mann: I'm trying . . .

Welch: But ignorance on my part.

Mann: I'm trying to . . .

Welch: I have rights to say, you know . . .

Mann: Yes, ma'am. I just want to make sure there's no type of drugs in the car, I mean ...

Welch: No. There's not.

* * *

Radio: Record is confirmed on Phoebe Welch ...

* * *

Mann: Okay, the warrant is confirmed.

Welch: What does that mean?

Mann: The warrant is valid out of Hereford.

Welch: Well, does it, can I, well ...

Mann: I'm gonna go up there and talk to her and let her know what's going on. You're going to be booked into the Dimmit Jail in Castro County, about ten miles north.

Welch: Okay. And so, now, but, listen, I, I promise you, I, I'm not the type of person to have warrants, but, so, can I, uh, you, you just don't know.

Mann: No, I don't have a clue, I just know the warrant's good and when we get there, we'll know more. We'll be able to look at the paperwork.

Welch: Well, so, and so, now, now Ginger can just take the truck? Or, like, the only thing I'm thinking of is that, I haven't had the truck very long and, you know, it is my truck and it's always hard when someone just ...

Mann: If you want her to. You want her to take it?

Welch: Well ...

Mann: She's going to be responsible for everything in it.

Welch: Well, would you just say that, look, I, I, I'm gonna go to jail and, but, you

know, just, just, hah, you know maybe, uh, just ...

Mann: Ma'am, do you have anything there, do you have ...

Welch: ... if she would just kind of stay at Clint's. All I want to know is if she'll just be at Clint's 'til maybe I can make a call or two ...

Mann: Do you know Clint's phone number?

Welch: Uh, yes, yes I do. Just tell her to, well, just tell her to be careful with the truck, okay?

WOMACK, J., concurring.

I joint the Court's opinion. I write only to point out that the trial court's decision to admit the evidence was justified by other laws than the law of consent.

When the officer arrested the appellant, he could search the passenger compartment of the vehicle and containers therein as an incident to the arrest. See *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). This justified the search that led to the discovery of the marihuana and the methamphetamine.

Because the vehicle was used in the commission of possession of methamphetamine, a felony under Chapter 481 of the Health and Safety Code, it was contraband. See Code of Criminal Procedure article 59.01(2)(B)(i). It was, therefore, subject to seizure and forfeiture. See id., article 59.02(a). Specifically, it could be seized without warrant incident to a lawful search incident to arrest. See id., article 59.03(b)(4). The search of the truck-bed in which the larger quantity of controlled substance was found was justifiable as a search of the contraband vehicle.

The officer did more than the law required when he sought consent to search the bed of the truck. The evidence would

have been admissible if he had not sought, or received, consent.