# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-04-00416-CR

---

**Robert Westley Morris, II, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT
NO. 7542, HONORABLE C. W. DUNCAN, JR., JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

Appellant Robert Westly Morris, II, pleaded guilty to manufacturing more than 400 grams of methamphetamine, for which the trial court adjudged him guilty and imposed an agreed twenty-year sentence. *See* Tex. Health & Safety Code Ann. § 481.112(a), (f) (West 2003). The sole issue on appeal is whether the court should have granted Morris's pretrial motion to suppress. We conclude that the motion was properly overruled.

When we review a trial court's ruling on a motion to suppress evidence, we defer to the court's factual determinations but review de novo the court's application of the law to the facts. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Because the court did not make explicit findings of fact, we review the evidence in the light most favorable to the ruling and assume the court made findings that are supported by the record and buttress its conclusion. *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). We must sustain a ruling admitting evidence

if the ruling is reasonably supported by the record and correct on any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

On the evening of January 11, 2003, Officer David Inocencio received a tip that Morris was operating a methamphetamine lab at his trailer house in rural Lampasas County. After determining that there was an outstanding warrant for Morris's arrest, Inocencio and other officers drove to Morris's residence but found no one present. The officers spoke, however, to Morris's uncle, whose residence was about two hundred yards from Morris's. The uncle told the officers that the trailer house belonged to Morris's father, who allowed Morris to stay there occasionally.

About ten minutes after the officers left Morris's residence without searching it, Morris was stopped and arrested on the warrant. Inocencio drove to the scene of the stop and asked Morris for permission to search his house. Morris refused his consent.

Meanwhile, another neighbor telephoned Morris's father, a truck driver who was at that time out-of-state, and informed him that the police had been at the trailer house. The father called the Lampasas County Sheriff's office and asked to speak to the officer in charge. While at the scene of the traffic stop, Inocencio returned the call and told Morris's father that his son was suspected of operating a drug lab in the house. Morris's father confirmed that he was the owner of the trailer house and that he allowed Morris to stay there from time to time. He then gave Inocencio permission to search the house and said that he would arrange to have his brother, Morris's uncle, meet them and unlock the door.

The officers returned to the trailer house where they were met by Morris's grandmother, who also lived nearby. She told the officers that she had received a telephone call from

her son asking her to open the door for the officers, and she did so.[1]  The officers entered and found the methamphetamine and paraphernalia giving rise to this prosecution.

The evidence shows that Morris's trailer house was on a 3.5 acre tract that had recently been purchased by his father.  Both Morris and his father testified that the father had given the house and property to Morris and did not live with Morris, but with Morris's grandmother.  Documents introduced by the defense showed that the father's bills, driver's license, tax return, and vehicle title used the grandmother's address.  Morris's father denied telling the officer that he shared the residence with his son.  He also testified that he would not have consented to the search if he had been told by Inocencio that Morris had not consented.[2]

A third party may consent to a search when he has equal control over and authority to use the premises.  *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) (citing *United States v. Matlock*, 415 U.S. 164, 171 (1974)).  Common authority derives from the mutual use of the property and may not be implied merely from the third party's property interest in the premises.  *Id*.  The State bears the burden of proving the third party's authority to consent to the search by clear and convincing evidence.  *Id*.

Even if the facts do not support a finding of actual third-party authority, a search is reasonable if the officers reasonably believed that the consent-giver had common authority over the premises.  *Riordan v. State*, 905 S.W.2d 765, 771 (Tex. App.—Austin 1995, no pet.) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)).  The State also bears the burden of proving that the officers

---

[1]  Morris's uncle arrived at the house a few minutes later.

[2]  Morris does not contend that his father's consent to the search was invalid in the face of his own refusal of consent.  *See Welch v. State*, 93 S.W.3d 50, 53-55 (Tex. Crim. App. 2002).

were objectively reasonable in their belief that the person who consented to the search was authorized to do so. *Id.* This burden is not met if, faced with an ambiguous situation, the officers proceed with the search without making further inquiry. *Id.*

The evidence, viewed in the light most favorable to the court's ruling, shows that Inocencio was told by Morris's uncle and father that the trailer house belonged to and was the residence of Morris's father, and that Morris lived there only occasionally.[3] The officer also knew that Morris's father had learned within minutes that the police had been at the trailer house and had called the sheriff's office to learn the reason for the visit. When contacted by Inocencio, Morris's father promptly consented to the search and arranged for someone to meet the officers and unlock the door.

Morris urges that Inocencio should have made further inquiries in order to confirm that the man to whom he spoke on the telephone was in fact Morris's father and that he had common authority over the premises. Morris points out that the officer did not run a check on the father's driver's license, ask where the father got his mail, ask the father for the address used on his personal checks and on his tax return, or ask where the father kept his personal belongings.

Under the circumstances, Inocencio could reasonably infer that the person to whom he spoke was Morris's father. It is unlikely that the neighbor would have called a stranger to report the presence of the police, or that Morris's grandmother would have unlocked the door to the trailer

---

[3] It was within the trial court's discretion to discount the testimony of Morris and his father denying that they shared the residence. The evidence showing that Morris's father had been using his mother's address could also be discounted in light of the evidence that Morris's father had purchased the land and trailer house only two months before the search.

house at the request of someone other than her son. All of the facts and circumstances known to the officer unambiguously supported the conclusion that Morris's father had common authority over the house trailer. Absent any ambiguity, Inocencio cannot be faulted for failing to make further inquiries into the father's authority to consent to the search.

We conclude that the evidence supports the conclusion that Morris's father had, at the least, apparent authority to consent to a search of the house trailer and that the officers' reliance on his consent was reasonable. The trial court did not err by overruling the motion to suppress.

The judgment of conviction is affirmed.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   July 12, 2005

Do Not Publish

5