



## MEMORANDUM OPINION

No. 04-10-00892-CR

Erik **JOHNSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 5, Bexar County, Texas
Trial Court No. 316873
Honorable Timothy Johnson, Judge Presiding

Opinion by:   Karen Angelini, Justice

Sitting:   Karen Angelini, Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice (concurring in the judgment only)

Delivered and Filed:  September 28, 2011

AFFIRMED

Appellant Erik Johnson was charged by information with possession of marijuana, two ounces or less. Johnson filed a motion to suppress evidence seized from his apartment alleging that the evidence was inadmissible because it was obtained without a warrant, consent, probable cause, or exigent circumstances. The trial court held a hearing on the motion to suppress and denied the motion. Thereafter, Johnson pled nolo contendere and was sentenced to forty days in jail and a $1,000.00 fine. Johnson appealed.

In two issues, Johnson argues the trial court erred in denying the motion to suppress because (1) the evidence was seized as a result of an unlawful, warrantless entry into his apartment without consent, probable cause, or exigent circumstances; and (2) even if the initial entry was valid, the subsequent search was unlawful. We affirm.

## BACKGROUND

Viewed in the light most favorable to the trial court's ruling, the evidence shows that on February 1, 2010, Bexar County Sheriff's Deputies Richard Mendez and Dennis Miranda were dispatched to Johnson's apartment complex for a keep-the-peace call. Johnson's roommate, Scott Huggins, had called the sheriff's office stating Johnson and Huggins had experienced a "falling out." Huggins asked for officers to stand by and ensure no altercation took place while Huggins removed his belongings from the apartment he shared with Johnson. Huggins indicated he was afraid for his safety because Johnson had weapons and a grenade in the apartment.

When the officers arrived at the apartment complex, they found Huggins, who appeared to be upset, waiting in the parking lot. Johnson then came out of the apartment and met Huggins and the officers in the parking lot. Johnson asked the officers why they were present. One of the officers stated they were there at Huggins's request to make sure nothing happened while Huggins moved out of the apartment. Johnson volunteered to stay in the parking lot with the officers while Huggins removed his belongings from the apartment. The officers informed Johnson they were not going to remain in the parking lot, but were going to stand by and ensure Huggins's safety while he removed his belongings from the apartment.

When it was clear that the officers were not going to remain in the parking lot, Johnson took off up the stairs in an apparent attempt to reach the apartment before anyone else. Alarmed by this, the officers increased their pace and caught up to Johnson as he was entering the

apartment. Upon entering the apartment, Mendez smelled the odor of marijuana. However, because Huggins had mentioned weapons and a grenade, Mendez's main concern was safety.

Once inside, Mendez conducted a protective sweep of the apartment to ensure the safety of the officers and Huggins. Mendez approached a locked door that Johnson identified as his bedroom. Johnson advised Mendez there was another man, a third roommate, in the bedroom. Mendez asked that the door be unlocked so he could complete the protective sweep. After several unanswered knocks, Johnson yelled for the bedroom door to be opened. A man opened the door, then went into an adjoining bathroom and locked the door behind him. Mendez knocked on the bathroom door and asked the man to come out. The man stated he was taking a shower. Mendez advised him that if he did not open the door, it would be kicked in. The man then opened the door and emerged fully clothed.

At this point, Mendez turned to Johnson and advised him, "Look, I've been doing this job for a long time. I already know something's going on." In response, Johnson fell to the floor and started crying, saying, "I'm sorry. I've never done this. It's in the closet." Mendez directed the three roommates to stay in the living room with Miranda, and he returned to Johnson's bedroom to check the inside of the closet. Upon opening the closet door, Mendez discovered several marijuana plants.

### STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress, an appellate court must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When a trial court makes explicit fact findings, the appellate court determines whether the evidence supports these fact findings. *Id.* The appellate court then reviews the trial court's legal ruling *de novo* unless the trial court's supported-by-the-record

explicit fact findings are also dispositive of the legal ruling. *Id.* We must uphold a trial court's ruling on a motion to suppress if there is any valid theory of law applicable to the case, even if the trial court did not base its decision on that theory. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

## INITIAL ENTRY

In his first issue, Johnson argues that the trial court erred in denying his motion to suppress because the marijuana was seized as a result of an unlawful warrantless entry into his residence without consent, probable cause, or exigent circumstances.

The Fourth Amendment prohibits unreasonable searches and seizures. *Welch v. State*, 93 S.W.3d 50, 52 (Tex. Crim. App. 2002). The entry into a residence by police officers is a "search" for purposes of the Fourth Amendment. *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010). Searches conducted without a warrant are unreasonable per se under the Fourth Amendment, subject only to only a few specifically established and well-delineated exceptions. *Welch*, 93 S.W.3d at 52. One recognized exception is when voluntary consent to search has been given. *Id*. Generally, when cotenants or joint occupants live at a residence, either tenant may give law enforcement officers consent to search the premises as long as that tenant has control over and authority to use the premises. *See Jones v. State*, 119 S.W.3d 766, 787 (Tex. Crim. App. 2003). However, the United States Supreme Court has held that "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." *Georgia v. Randolph*, 547 U.S. 103, 122-23 (2006).

In the present case, the trial court found (1) Huggins gave the officers consent to enter the apartment, (2) Johnson did not give the officers consent to enter the apartment, and (3) Johnson

expressed a desire that the officers not enter the apartment. These findings are supported by the record.

Relying on *Randolph,* Johnson argues Huggins's consent was invalidated by Johnson's objection to the officers entering the apartment. *See id.* In *Randolph*, police were called to the home of a husband and wife in the midst of a custody battle over their son. *Id.* at 107. Once on the scene, the wife informed the police that her husband was a drug user and that if the officers went into the couple's home they would find cocaine. *Id.* The wife then gave the police consent to search the home. *Id.* When the police asked the husband for consent to search the home, he unequivocally refused. *Id.* The officers then entered the home over the husband's protest, searched the home, found cocaine, and charged the husband with possession of cocaine. *Id.* The trial court refused to suppress the cocaine, but was later reversed by the state court of appeals and the state supreme court. *Id.* at 107-08. Ultimately, the United States Supreme Court held the wife's consent was invalidated by the husband's unequivocal objection to the warrantless entry. *Id.* at 122-23.

Nevertheless, the Supreme Court in *Randolph* recognized that circumstances may exist in which an unequivocal objection from one inhabitant would not invalidate consent from another inhabitant. The Supreme Court specifically cited situations of domestic violence as an exception to its holding:

> No question has been raised, or reasonably could be, about the authority of the police to enter a dwelling to protect a resident from domestic violence; so long as they have good reason to believe such a threat exists, it would be silly to suggest that the police would commit a tort by entering, say, to give a complaining tenant the opportunity to collect belongings and get out safely, or to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur, however much a spouse or other co-tenant objected. (And since the police would then be lawfully in the premises, there is no question that they could seize any evidence in plain view or take further action supported by any consequent probable cause, *see Texas v. Brown*, 460 U.S. 730, 737-739 (1983) (plurality

opinion).) Thus, the question whether the police might lawfully enter over objection in order to provide any protection that might be reasonable is easily answered yes. *See* 4 LA FAVE § 8.3(d), at 161 ("[E]ven when ... two persons quite clearly have equal rights in the place, as where two individuals are sharing an apartment on an equal basis, there may nonetheless sometimes exist a basis for giving greater recognition to the interests of one over the other.... [W]here the defendant has victimized the third-party ... the emergency nature of the situation is such that the third-party consent should validate a warrantless search despite defendant's objections" (internal quotation marks omitted; third omission in original)). The undoubted right of the police to enter in order to protect a victim, however, has nothing to do with the question in this case, whether a search with the consent of one co-tenant is good against another, standing at the door and expressly refusing consent.

*Id*. at 118-119.

The circumstances in this case fit within the exception recognized by the Supreme Court in *Randolph*. Here, the officers were called by Huggins to protect him while he moved out of the apartment he shared with Johnson. The officers were told by Huggins that he and Johnson had had a dispute, that Johnson had weapons and a grenade in the apartment, and that Huggins feared for his safety. The officers observed Huggins's and Johnson's demeanor and behavior. They saw that Huggins was upset and noted that Johnson was eager to gain access to the apartment before them. The officers entered the apartment for the sole purpose of allowing Huggins the opportunity to collect his belongings and move out of the apartment safely. Based on these circumstances, the officers' initial entry into the apartment was legal. We, therefore, overrule Johnson's first issue.

## PROTECTIVE SWEEP

In his second issue, Johnson argues that even if the officers' initial entry into the apartment was legal, their subsequent actions resulting in the discovery of the marijuana were unlawful. According to Johnson, if the police wanted to search anywhere in the apartment other than Huggins's bedroom, they needed to get a search warrant or valid consent for further

searching. Johnson further argues that by looking in his bedroom closet, the officer exceeded the scope of any protective sweep. The State counters that it was reasonable and lawful for the officer to have looked inside the closet where the marijuana plants were found.

A "protective sweep" is a "quick and limited search of the premises" "conducted to protect the safety of police officers or others." *Reasor v. State*, 12 S.W.3d 813, 815 (Tex. Crim. App. 2000) (quoting *Maryland v. Buie*, 494 U.S. 325, 328 (1990)). Protective sweeps are generally conducted incident to an arrest, but the absence of an arrest does not preclude a protective sweep, even in a defendant's home. *United States v. Gould*, 364 F.3d 578, 584-86 (5th Cir. 2004), *abrogated on other grounds by Kentucky v. King*, 131 S.Ct. 1849, 1859 (2011). For the sweep to be valid, the police must not have entered the home illegally, and their presence must be for valid law enforcement purposes. *Id.* at 587. A legitimate protective sweep must be supported "'by a reasonable, articulable suspicion…that the area to be swept harbors an individual posing a danger to' those on the scene," and may be no more than a "'cursory inspection of those spaces where a person may be found.'" *Id.* (quoting *Buie*, 494 U.S. at 1099-1100); *see also Reasor*, 12 S.W.3d at 817 ("[A] police officer may sweep the house only if he possesses an objectively reasonable belief, based on specific and articulable facts, that a person in that area poses a danger to that police officer or to other people in the area."). Finally, the sweep must "'last[] no longer than is reasonably necessary to dispel the reasonable suspicion of danger.'" *Gould*, 364 F.3d at 587 (quoting *Buie*, 494 U.S. at 1099).

As previously determined, the officers entered Johnson's apartment legally and for a valid law enforcement purpose. Moreover, Huggins's initial claim of weapons and a grenade in the apartment provided a basis for the officer to conduct an initial protective sweep of the apartment to ensure the safety of the officers and Huggins. Thereafter, the presence of another

individual, who was first concealed in Johnson's bedroom and later in an adjoining bathroom, provided a basis for expanding the scope of this protective sweep. Finally, Johnson's statement indicating, "It's in the closet," further justified the officer's action in opening Johnson's closet door. Under these circumstances, the officer could have formed a reasonable, articulable suspicion that a dangerous or armed individual was in the closet and posed a danger to those on the scene. *See Pace v. State*, 318 S.W.3d 526, 534 (Tex. App.—Beaumont 2010, no pet.) (holding officer who was lawfully in the appellant's house was justified in following appellant into the bedroom based on a concern for the officer's own safety). We, therefore, overrule Johnson's second issue.

## CONCLUSION

We conclude that the trial court did not err in denying Johnson's motion to suppress. We, therefore, affirm the judgment of conviction.

Karen Angelini, Justice

DO NOT PUBLISH