**Affirmed and Memorandum Opinion filed January 9, 2020.**



In The

# Fourteenth Court of Appeals

NO. 14-18-00575-CR
NO. 14-18-00576-CR

## ADRIENNE KLEIN AND PETER ORTIZ, Appellants

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Cause Nos. 17-CR-1886 & 17-CR-1887**

## MEMORANDUM OPINION

In these consolidated cases, both of which stem from prosecutions for possession of a controlled substance, appellants Adrienne Klein and Peter Ortiz challenge the trial court's ruling on their joint motion to suppress. Finding no abuse of discretion, we affirm the trial court's judgments.

# BACKGROUND

While on patrol at roughly 3:30 in the morning, an officer saw a truck parked at a storage facility in an area of town where burglaries had recently occurred. The officer suspected that another burglary may be afoot because vehicles are not normally parked at that storage facility at such a late hour, even though the storage facility allows for 24-hour access. The officer pulled in to the storage facility, which was ungated, and investigated the scene.

The officer did not find any obvious signs of criminal activity. The truck was unoccupied and legally parked, and there was no evidence of shattered glass or broken doors. But because the officer could not discern what was happening inside of the storage facility, which required an access key at that time, the officer decided to wait outside until someone returned to the truck. The officer parked his patrol car along the side of the building, where it could not be seen from the front doors. The officer then exited the patrol car and walked to the corner of the building, where he waited.

After twenty or thirty minutes, Klein and Ortiz exited the storage facility with luggage in tow. They were both startled by the officer, who introduced himself and asked if they had a storage unit inside. They responded that they did have a storage unit (which was later confirmed to be true) and they said that they were moving.

The officer had received specialized training to recognize signs of intoxication from both alcohol and drugs, and he drew on this training within ten seconds of meeting Klein and Ortiz, when he came to suspect that they were under the influence of a stimulant. The officer noted that their pupils were dilated, even though they were under very bright fluorescent lights. Their hands were also trembling, and Klein in particular could not stand still.

The officer asked to see their identification. Klein said that her license was in her purse, which was inside of the truck. She had her license number memorized, which she gave to the officer instead. Ortiz gave the officer his name and date of birth. The officer radioed this information to his dispatcher and continued to evaluate Klein for possible signs of public intoxication.

The officer asked Klein to close her eyes, and she complied. With her eyes closed, the officer noticed that Klein was exhibiting eyelid tremors, which can be caused by a stimulant. The officer then asked Klein to open her eyes, and he shined a doctor's light into them. The officer saw that her pupils were still dilated and that there was very little constriction, which is another sign that she was under the influence of a stimulant. The officer asked Klein about her history of drug use, and she responded that she had used methamphetamine as recently as the day before.

During this evaluation of Klein, the dispatcher informed the officer that there was an outstanding warrant for Ortiz's arrest. The officer received this information over an earpiece, which only he could hear. Without acting on Ortiz's warrant, the officer asked for Klein to retrieve her license in order to verify her identity and to confirm that she was not concealing her own warrants under a different name. Klein grabbed her purse out of the passenger's side of the truck and returned to the loading dock. She left the passenger door open.

Klein's license matched the information she had previously given, and she consented to the search of her purse, which contained nothing illegal. The officer then informed Ortiz of the arrest warrant, placed him in handcuffs, and sat him down on the loading dock.

The officer asked Klein, who was not under arrest, if the truck contained anything illegal, and her evasive answers led the officer to believe that it did. Klein claimed that the truck was hers, but she said that she did not know what was in the

3

truck because other people had been using it. She also indicated that she had seen a meth pipe in the truck, but she claimed that it belonged to someone else.

Klein consented to a search of the truck, and when the officer approached the passenger side, he saw a small plastic bag in the door handle containing methamphetamine. The officer placed Klein under arrest after finding this contraband. Following Klein's arrest, the officer found another bag containing methamphetamine in the area by the loading dock where Ortiz had been sitting in handcuffs.

Klein and Ortiz were each charged with possession of methamphetamine. They then moved to suppress that evidence on Fourth Amendment grounds. A joint hearing was held, and the only testifying witness was the officer.

At the end of the hearing, Klein argued that the motion should be granted because her consent to search the truck was tainted by an illegal detention, unsupported by reasonable suspicion. Ortiz reiterated much of the same points as Klein, without ever acknowledging that he had an outstanding warrant for his arrest.

The trial court found that Klein's interaction with the officer began as a consensual encounter and that it progressed into an investigative detention after the officer developed reasonable suspicion that she was committing the offense of public intoxication. The trial court further found that Ortiz was lawfully arrested pursuant to a warrant. Based on these findings, the trial court denied the motion to suppress.

Klein and Ortiz then pleaded guilty to the charged offenses. The trial court deferred an adjudication of guilt as to Klein, sentenced Ortiz to fifteen months' imprisonment, and certified that each defendant had a right to appeal the adverse decision on the motion to suppress. They now challenge that ruling here.

4

## ANALYSIS

### I.      Burden of Proof

When, as here, a defendant alleges that evidence was obtained in violation of the Fourth Amendment, the defendant bears the initial burden of rebutting the presumption of proper police conduct. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The defendant can satisfy this burden by producing some evidence that a search or seizure occurred without a warrant. *Id.* Once the defendant has made this initial showing, the burden of proof shifts to the State, which must then establish that there actually was a warrant or that the search or seizure was reasonable. *Id.*

### II.     Ortiz was lawfully arrested pursuant to a warrant.

At the hearing on the motion to suppress, the prosecutor stipulated that there was "a warrantless arrest" (in the singular, not the plural). But there were two defendants present at the joint hearing, and the prosecutor did not identify which of the two defendants was arrested without a warrant (or whether both of them were arrested without a warrant). Even if we were to assume that both defendants successfully shifted the burden of proof with the prosecutor's stipulation, the officer testified without objection that Ortiz had a warrant for his arrest and that Ortiz was actually arrested pursuant to that warrant. The trial court credited this portion of the officer's testimony, and we must do the same under our standard of review because the officer's testimony supports the trial court's ruling. *See St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007) ("Trial courts are given almost complete deference in determining historical facts."); *see also* Tex. Code Crim. Proc. art. 15.26 (providing that an officer may execute an arrest warrant even if the officer does not have the warrant in his physical possession at the time of the arrest). Accordingly, we cannot say that Ortiz's arrest violated the Fourth Amendment. *See*

*Haley v. State*, 480 S.W.2d 644, 645 (Tex. Crim. App. 1972) (holding that the defendant had no basis to complain about the fruits of his arrest after he was lawfully arrested pursuant to an outstanding warrant).

## III.  Klein's interaction with the officer began as a consensual encounter.

As for Klein, there was no evidence that she had any outstanding warrants, which means that the State had the burden of showing that her warrantless arrest was reasonable. The primary dispute in the trial court and on appeal is whether the State satisfied that burden.

In the trial court, the State argued that the arrest was reasonable because the officer discovered methamphetamine in Klein's truck after Klein consented to a search of the truck. *See Welch v. State*, 93 S.W.3d 50, 52 (Tex. Crim. App. 2002) ("Searches conducted without a warrant are unreasonable *per se* under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. One recognized exception is when a voluntary consent to search has been given."). Klein responded that her consent was invalid because it was the product of an illegal detention. The trial court resolved this dispute when it determined that Klein's initial interaction with the officer was a consensual encounter that progressed into a lawful detention. Klein challenges that ruling on appeal, arguing in two parts that the interaction began as an investigative detention (instead of a consensual encounter) and that the detention was unsupported by reasonable suspicion.

Because the State prevailed in the trial court, the State is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *See State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). But in deciding whether that evidence amounts to a consensual encounter or an investigative detention under the Fourth Amendment, our review is

de novo because that issue involves an application of legal principles to a specific set of facts. *Id.*

Consensual encounters between officers and citizens do not implicate Fourth Amendment protections. *See State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011). An officer is free to stop and question a fellow citizen without any justification needed. *Id.* Likewise, the citizen is free to ignore the officer's question and terminate the encounter. *Id.* Even when the officer does not communicate to the citizen that the request for information may be ignored, the citizen's acquiescence to the officer's request does not cause the encounter to lose its consensual nature. *Id.*

Courts must take into account the totality of the circumstances when deciding whether a reasonable person would have felt free to ignore the officer's request or to terminate the consensual encounter. *See Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013). If ignoring the request or terminating the encounter is an option—even an "uncomfortable" option—then no Fourth Amendment seizure has occurred. *Id.* at 667–68. But if an officer through force or show of authority succeeds in restraining a citizen in her liberty, the encounter is no longer consensual. *Id.* at 668. It is instead a Fourth Amendment seizure, subject to Fourth Amendment scrutiny. *Id.*

After considering the totality of the circumstances, we conclude that a reasonable person in Klein's shoes would have felt free to ignore the officer. The evidence showed that the officer was on foot and in a public place. He did not have his gun drawn on Klein. Nor did he put Klein under a spotlight, or otherwise command that Klein answer his questions. Also, because the officer parked his patrol car along the side of the storage facility, away from Klein's truck, Klein could have ignored the officer and left the storage facility in her truck. Exercising that option

may have been uncomfortable for Klein, but she could have done so completely unimpeded.

A portion of the interaction was recorded on video, and the video showed that the officer had engaged Klein "in a friendly, conversational manner," to borrow the trial court's own words. There was no display of authority other than the officer's uniform, which is insufficient to establish that a detention occurred, absent some additional showing that the officer's authority could not be ignored, avoided, or terminated. Because there was no such showing, the record supports the trial court's finding that Klein's interaction with the officer began as just a consensual encounter.

Klein counters that she was not free to leave because she asked the officer if she could briefly return to her storage unit to prevent an automatic lockout, and the officer told her to "hold off on that for just a minute." This argument may demonstrate that a detention occurred at some point, but it does not demonstrate that the officer detained Klein "at the inception of their interaction," which is how Klein has framed her appellate complaint.

The officer testified that the interaction began when he introduced himself and asked Klein if she had a unit in the storage facility. There was no evidence that the interaction began with Klein requesting to return to her storage unit and with the officer refusing that request. The video captured neither that exchange nor the initial moments of the interaction. On this record, where the only evidence of the initial moments is the testimony of the officer, we must conclude that the interaction began as a consensual encounter, and that it later progressed into an investigative detention, as we explain more fully below.

## IV. Klein's subsequent detention was supported by reasonable suspicion.

The officer testified that his interaction with Klein evolved from a consensual encounter into a detention for possible public intoxication. The trial court agreed

8

with that assessment, and found that Klein had been lawfully detained. Klein challenges that finding, arguing that the detention lacked reasonable suspicion of public intoxication.

An officer may stop and briefly detain a person for investigative purposes on less information than is constitutionally required for probable cause to arrest. *See Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010). But these investigative detentions must still be supported by reasonable suspicion. *See Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). Reasonable suspicion exists if an officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Id.* A determination of reasonable suspicion is made by considering the totality of the circumstances, giving almost total deference to the trial court's determination of historical facts and reviewing de novo the trial court's application of the law to those facts not turning on an evaluation of credibility and demeanor. *Id.*

To support the detention in this case, the officer needed reasonable suspicion that Klein was "appear[ing] in a public place while intoxicated to the degree that [she] may endanger [herself] or another." *See* Tex. Penal Code § 49.02(a) (defining the offense of public intoxication). The storage facility constitutes a "public place," because it is a "place to which the public or a substantial group of the public has access." *Id.* § 1.07(a)(40). And the evidence established that the officer had specific, articulable facts to believe that Klein was intoxicated in that public place. In particular, Klein's eyes were dilated, despite being under bright lights. She was exhibiting eyelid tremors. Her hands were jittery, and she could not remain still. According to the officer, who had experience dealing with substance abusers, all of these symptoms were consistent with being under the influence of a stimulant.

9

Klein counters that the officer lacked reasonable suspicion to believe that she presented a danger to herself or to others because she did not smell of alcohol, she was not unsteady on her feet, and she did not leave her truck running, all of which are factors that other courts have considered in cases involving public intoxication. But the public intoxication statute is not limited to intoxication by alcohol; it can also apply to intoxication by drugs, and Klein admitted that she had recently consumed methamphetamine. Even though Klein represented that her consumption had occurred the day before, the officer could have reasonably determined that the consumption was even more recent, based on her physical symptoms. *See York v. State*, 342 S.W.3d 528, 537 (Tex. Crim. App. 2011) ("Although Officer Johnson did not smell alcohol as he approached the car, that fact did not cause reasonable suspicion to dissipate, in part because appellant could still have been intoxicated by drugs."). And given Klein's proximity to her truck, her statement about moving, and her possession of so much luggage, the officer could have reasonably determined that Klein may be driving (not walking) to her next destination—especially after Ortiz had been arrested and there was no other person available to transport her and her belongings. The officer could have likewise determined that if Klein drove on the nearby highway in her current state of intoxication, she may pose a threat to herself or to others. *Id.* ("Or he might have returned to the road, where he would pose a threat to others who were traveling. It would be reasonable to suspect that appellant posed a danger to himself or others."); *see also State v. Martinez*, 569 S.W.3d 621, 628 (Tex. Crim. App. 2019) (holding that the danger element is satisfied if there is evidence that the defendant rendered herself or others subject to "potential danger"); *Harper v. State*, 217 S.W.3d 672, 675–76 (Tex. App.—Amarillo 2007, no pet.) (holding in a prosecution for possession of methamphetamine that an officer could reasonably suspect that the defendant was committing, or would soon commit, the offense of public intoxication, where the

10

officer found the defendant behind the wheel in a parking lot "in a groggy or 'out of it' state," even though the defendant had already been evaluated by EMS and was found to not be in any sort of medical distress).

We need not determine whether, on this record, the evidence would be sufficient to support a determination of guilt for public intoxication, an offense for which Klein was neither arrested nor charged. Instead, we need only determine whether the officer had specific, articulable facts, combined with the rational inferences from those facts, that would permit the reasonable suspicion that Klein actually was, had been, or soon would be committing the offense of public intoxication. After considering all of the evidence and the totality of the circumstances, we conclude that the officer could have formed that reasonable suspicion. Because that reasonable suspicion supported the officer's investigative detention of Klein, we further conclude that the consent given by Klein to search her truck was not tainted, and that the discovery of drugs and subsequent arrest of Klein were lawful.

## CONCLUSION

The trial court's judgments are affirmed.


/s/ Tracy Christopher
   Justice


Panel consists of Justices Christopher, Spain, and Poissant.

Do Not Publish — Tex. R. App. P. 47.2(b).