

**NUMBER 13-08-551-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**DENNIS WAYNE LIMON, JR.,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                         **Appellee.**

---

**On appeal from the 36th District Court
of San Patricio County, Texas.**

---

**DISSENTING OPINION**

**Before Justices Yañez, Benavides, and Vela
Dissenting Opinion by Justice Vela**

In this case of first impression, the majority holds that before police may gain warrantless entry into a home via third-party consent from a minor who is a close relative of the home owner, the officer must ask the minor certain questions to make sure the minor has authority to permit entry. Slip op. at 12-13. Neither the United States Supreme Court

nor the Texas Court of Criminal Appeals has required law enforcement to follow this procedure. In *United States v. Matlock,* the Supreme Court explained:

> The authority which justified the third-party consent does not rest upon the law of property, with its attendant historical and legal refinement, but rests rather on *mutual use of the property* by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

415 U.S. 164, 171 n.7 (1974) (citations omitted) (emphasis added). In line with *Matlock,* the court of criminal appeals has stated:

> [I]n order for a third person to validly consent to a search, that person must have equal control and equal use of the property searched. And we have recently emphasized that the third party's legal property interest is not dispositive in determining whether he has the authority to consent to a search, saying that "common authority derives from the *mutual use of the property*, not the ownership or lack thereof."

*Welch v. State*, 93 S.W.3d 50, 53 (Tex. Crim. App. 2002) (footnotes omitted) (emphasis added). Neither *Matlock* nor *Welch* drew a distinction between minors and adults. Furthermore, the facts of this case simply do not warrant the creation of a new rule of law for police to follow when conducting such searches in this Court's jurisdiction. Because I conclude the majority has created an inflexible requirement that law enforcement must follow and has erred in failing to give proper deference to the trial court's determinations, I would hold that the trial court did not abuse its discretion in denying the motion to suppress.

**Standard of Review**

Courts apply a bifurcated standard when reviewing a motion to suppress evidence. *St. George v. State,* 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We review de novo the trial court's application of law to the facts, but we defer to the trial court on determinations

2

of credibility and historical fact. *Id*.; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Whether consent was given voluntarily under the Fourth Amendment to the United States Constitution is a fact question that is given deference. *Ohio v. Robinette*, 519 U.S. 33, 40 (1996). "[W]hether a third party had actual authority to consent to a search of another's property and whether an officer was reasonable in finding that a third party had apparent authority to consent are mixed questions of law and fact which reviewing courts should examine de novo." *Hubert v. State*, No. PD-0493-09, 2010 WL 2077166, at *3 (Tex. Crim. App. May 26, 2010). When, as in this case, "a trial court does not enter findings of fact, a reviewing court must view the evidence in a light most favorable to the trial court's rulings and assume that the trial court resolved any issues of historical fact or credibility consistently with its ultimate ruling." *Id*. We review a ruling on a motion to suppress evidence for abuse of discretion and view the facts in the light most favorable to the trial court's decision. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We will sustain the trial court's ruling if the ruling "is reasonably supported by the record and is correct on any theory of law applicable to the case." *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

### Third-Party Consent

The Fourth Amendment provides protection from "unreasonable" searches and seizures by government officials. U.S. CONST. amend. IV. Generally, searches performed without a warrant are unreasonable. *Maryland v. Dyson*, 527 U.S. 465, 466 (1999); *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). An exception to the general rule arises when someone voluntarily consents to a search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Whether it is reasonable under the Fourth Amendment for an officer to rely on consent is

3

a question that is determined by examining the totality of the circumstances. *Maxwell*, 73 S.W.3d at 281 (citing *Robinette*, 519 U.S. at 40).

"A third party can consent to a search to the detriment of another's privacy interest if the third party has actual authority over the place or thing to be searched." *Hubert*, 2010 WL 2077166, at *3. In other words, the third party may, in his own right, give valid consent when he and the absent, non-consenting person share common authority over the premises or property. *Matlock*, 415 U.S. at 170; *Becknell v. State*, 720 S.W.2d 526, 528 (Tex. Crim. App. 1986). Even though property interests are relevant to this determination, we do not determine the commonality of authority to consent solely by the law of property. *Matlock*, 415 U.S. at 171 n.7; *Maxwell*, 73 S.W.3d at 281. Rather, a party shows common authority by

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Hubert*, 2010 WL 2077166, at *4 (citing *Matlock*, 415 U.S. at 171 n.7). "A defendant who has thus assumed the risk that another may permit a search of their shared property or premises may not complain of that search under the Fourth Amendment." *Id*.

The State bears the burden to show that a person who consented to a search either had actual or apparent authority to consent. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *Malone v. State*, 163 S.W.3d 785, 797-98 (Tex. App.–Texarkana 2005, pet. ref'd). "To meet its burden, the State must provide evidence that a third party either had mutual access to and control over the place that was searched, or that the officers conducting the search reasonably believed facts provided to them by a third party that would have been legally sufficient to justify a search as reasonable." *Hubert*, 2010 WL 2077166, at *4.

4

Under the Fourth Amendment, the State must show by a preponderance of the evidence that it was reasonable for an officer to proceed on the information available to the officer. *Maxwell*, 73 S.W.3d at 281.

## Analysis

The trial court, in denying appellant's suppression motion, made implied findings of fact that Officer Perez's testimony was credible and the facts were as he testified. *State v. Ross*, 32 S.W.3d 853, 856 n.22 (Tex. Crim. App. 2000). Likewise, this Court also accepts as true and credible Officer Perez's testimony at the suppression hearing. *Hubert*, 2010 WL 2077166, at *4.

## Actual Authority

On the basis of the testimony elicited during the suppression hearing, the trial court could have found: (1) that Mr. and Mrs. Limon owned the home that the officers searched; (2) that Officer Perez had reasonable suspicion to believe that the Limon kids were inside the Limons' residence; (3) that Officer Perez knocked on the Limons' front door in the early morning following the drive-by shootings; (4) that Mr. Limon's thirteen- or fourteen-year-old nephew, A.S., opened the front door; (5) that Officer Perez asked A.S. for permission to enter the house because he was investigating a drive-by shooting; (6) that neither Officer Perez nor any other officer threatened or deceived A.S. in order to gain entry into the home; (7) that A.S. permitted the officers to enter the home; and (8) that despite A.S.'s minority status, Officer Perez was able to communicate with A.S., and he had the capacity to understand why Officer Perez wanted to enter the home. The record contains no evidence to show that A.S. was either asleep or under the influence of any substance prior to the time he opened the front door. After examining the totality of the circumstances, I would hold that the State presented evidence supporting an implied finding that the third

5

party, A.S., voluntarily consented to the officers' entry into the home. *See Hubert*, 2010 WL 2077166, at *3 (stating that "[w]hether consent was given voluntarily under the Fourth Amendment is a fact question to be given deference.").

A.S.'s minority status does not automatically mean he could not have voluntarily consented to the entry of the home. *See, e.g., Russell v. State*, 739 S.W.2d 923, 928 (Tex. App.–Dallas 1987, pet. dism'd w.o.j.). I would also conclude, after examining the totality of the circumstances, that the State presented evidence supporting an implied finding that A.S. had joint access to or control over the premises and that Officer Perez reasonably believed that A.S. had the right to permit entry. *See Fancher v. State*, 659 S.W.2d 836, 839 (Tex. Crim. App. 1983) (explaining that "[i]t is well established in Texas that third parties have authority to consent to a search when they have equal control over and equal use of the premises being searched.").

In *Hubert*, the court of criminal appeals stated that "under the common authority test, where the defendant lives with a parent or other close relative, and the relative consents to a search of defendant's bedroom, most courts presume that the relative has sufficient common authority over the bedroom to authorize the consent to search." *Id*., 2010 WL 2077166, at *5 (internal quotes omitted). Even though appellant could have overcome this presumption by presenting evidence that he had exclusive possession of the searched premises,[1] the evidence elicited at the suppression hearing showed that the door to the bedroom in which Officer Perez found appellant was open, and the bedroom light was turned on. I would hold that, on the facts as the trial court was entitled to view them, A.S. had actual authority to consent to the entry into the home. *See id*.

---

[1]*Hubert v. State*, No. PD-0493–09, 2010 WL 2077166, at *5 (Tex. Crim. App. May 26, 2010).

## Apparent Authority

Even if A.S. did not have actual authority to consent to the entry, the entry is reasonable under the "apparent authority" doctrine. *See Hubert*, 2010 WL 2077166, at *4 (stating that "[a]ctual authority is not necessarily a prerequisite for a valid consensual search. . . ."). The United States Supreme Court has explained that when an officer reasonably, though erroneously, believed that a third party purporting to provide consent has actual authority over the place or thing to be searched, apparent authority exists, and the purported consent from the third party can serve to make the search reasonable. *Rodriguez*, 497 U.S. at 186. In other words, "[e]ven if the third party lacks actual authority to consent—that is, he does not actually have joint access to or control over the premises—his purported consent can nevertheless validate a search if it reasonably appears to the police that he does in fact have authority." *Hubert*, 2010 WL 2077166, at *4.

Here, the State presented evidence supporting an implied finding that Officer Perez did, in fact, act as would a person of reasonable caution. An officer might reasonably believe that a person who, in the early morning, opens the front door of a home in response to a knock, is a resident of the house and has "mutual use of the property." *See Matlock*, 415 U.S. at 171 n.7; *Welch*, 93 S.W.3d at 53. In this case, the person who opened the front door was Mr. Limon's nephew. Officer Perez could have, therefore, made a good-faith reasonable inference that A.S. could validly give him and Officer Hernandez consent to enter the home. I would hold that Officer Perez acted in good faith and made a reasonable inference based on the facts of the situation. Based upon the totality of the circumstances, the evidence supported an implied finding that Officer Perez reasonably believed that A.S. had common authority over the premises and, therefore, had apparent

authority to consent to the entry into the home. Accordingly, the trial court did not abuse its discretion in denying the motion to suppress based on the initial consent to enter the home.

Because an invitation to officers to enter a residence ordinarily cannot be construed as an invitation or consent to search,[2] I address whether Officers Perez and Hernandez could proceed to the southwest bedroom. A "'protective sweep' is a 'quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *State v. Sheppard*, 271 S.W.3d 281, 290 n.30 (Tex. Crim. App. 2008) (quoting *Maryland v. Buie*, 494 U.S. 325, 327-28 (1990)). "The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 337 (quoted in *Reasor v. State*, 12 S.W.3d 813, 816 (Tex. Crim. App. 2000)). The protective sweep "is permitted only when 'justified by a reasonable, articulable suspicion that the house is harboring a person posing a danger to those on the arrest scene.'" *Reasor*, 12 S.W.3d at 816 (quoting *Buie*, 494 U.S. at 336).

Based upon what Officer Perez was told about the shootings, when considered with the presence of the green, four-door car outside the Limon residence, he had reason to believe that suspects were in the house with weapons. This evidence supported an implied finding of specific and articulable facts of a danger to the officers, sufficient to enable Officers Perez and Hernandez to move forward inside the Limon residence to a bedroom under the auspices of a protective sweep.

---

[2]*Alberti v. State*, 495 S.W.2d 236, 237 (Tex. Crim. App. 1973) (op. on reh'g).

Even assuming the entry and protective sweep were unlawful, if the State showed by clear and convincing evidence that Mr. and Mrs. Limon's consent was sufficiently attenuated from any illegal entry and sweep, the evidence found in the search is admissible. *See Reasor*, 12 S.W.3d at 819. When consent to search follows an illegal entry onto property, we analyze the consent, using the factors set out in *Brick v. State*, 738 S.W.2d 676 (Tex. Crim. App. 1987), to determine whether it was tainted by illegal police conduct. *See Beaver v. State*, 106 S.W.3d 243, 250 (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd). The *Brick* factors include:

> the proximity of the consent to the arrest, whether the seizure brought about police observation of the particular object which they sought consent to search, whether the illegal seizure was flagrant police misconduct, whether the consent was volunteered rather than requested by the detaining officers, whether the arrestee was made fully aware of the fact that he could decline to consent and thus prevent an immediate search of the car or residence, and whether the police purpose underlying the illegality was to obtain the consent.

*Brick*, 738 S.W.2d at 680-81.

With respect to whether Mr. and Mrs. Limons' written consent to search their home was voluntary, the evidence showed that when the officers secured the home for weapons, they made Mr. Limon lie on his bedroom floor and they handcuffed him. His wife was handcuffed and taken to a common area of the house where she was seated. Officer Perez allowed Mr. Limon to stand, removed the handcuffs, and allowed him to get dressed. After removing the handcuffs, Officer Perez asked him for consent to search the house. Mr. Limon told him to talk to his wife. Mrs. Limon's handcuffs were removed, and Officer Perez took Mr. and Mrs. Limon into the kitchen. There, he explained the situation to them and read them the consent-to-search form. This form made them aware of their right to

9

refuse consent to a search of their home.[3] Mr. and Mrs. Limon gave him consent to search their home, and both of them signed the form.[4] Officer Perez testified that they were not under arrest and were not wearing handcuffs when they consented to the search. Reviewing the totality of the circumstances,[5] I would hold that the evidence supports an implied finding by clear and convincing evidence that Mr. and Mrs. Limon's consent to search their home was free and voluntary and not the result of duress or coercion. *See Gutierrez v. State*, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007) (stating that "[t]he validity of a consensual search is a question of fact, and the State bears the burden to prove by clear and convincing evidence that consent was obtained voluntarily" and "was not the result of duress or coercion.").

Applying the remaining *Brick* factors, Mr. and Mrs. Limon consented to the search shortly after police swept the home for weapons. Finding the weapons in plain view in the southwest bedroom may have encouraged the police to request to search the entire home, but they did not search the entire home until after receiving written consent to search. The police conduct was not flagrant. Officer Perez had information that the Limon kids were involved in one of the shootings and that a green, four-door car was seen leaving the area of the other shooting. When he arrived at the Limon residence, a green, four-door car was

[3]The consent-to-search form stated, in relevant part:

I, <u>Dennis Limon/Beatrice Limon</u> having been informed by the hereafter named Texas Peace Officer, that I have a constitutional right to be free from having him or other officers make a warrantless search of the hereafter mentioned premises under my control and also a constitutional right to refuse to give him or any other officer consent to make such a search and that such rights are guaranteed to me both by the Texas and U.S. Constitutions, do hereby voluntarily waive those rights. . . .

[4]The consent-to-search form was admitted into evidence at the suppression hearing as State's exhibit 1. It was admitted into evidence at the trial on guilt/innocence as State's exhibit 78.

[5]*See Gutierrez v. State*, 221 S.W.3d 680, 686-87 (Tex. Crim. App. 2007) (stating that to determine whether the State met its burden, we look at the totality of the circumstances).

10

parked out front. It had a warm hood and a bullet hole in the front-passenger door. The police did not force their way into the house to investigate the shootings; rather, Officer Perez told A.S. he was investigating a shooting and obtained his consent to enter. Mr. and Mrs. Limon were made fully aware of the fact that they could decline to consent to a search of their home and thus prevent an immediate search.

I conclude that even if the officers unlawfully entered and swept the home, the evidence supports an implied finding that Mr. and Mrs. Limon's consent to search their home was sufficiently attenuated from any illegality. *See Reasor*, 12 S.W.3d at 819. Accordingly, the trial court did not err in denying the motion to suppress on the basis of any unlawful entry and protective sweep. I hold the trial court did not abuse its discretion by denying the motion to suppress on this basis.

I would overrule the issue and affirm the trial court's judgment. For these reasons, I respectfully dissent.


ROSE VELA
Justice


Delivered and filed the
17th day of June, 2010.