

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | |
|---|---|
| § | No. 08-11-00189-CR |
| § | Appeal from |
| § | 41st District Court |
| EX PARTE: JESUS NIEVES § | |
| § | of El Paso County, Texas |
| § | (TC # 20030D04182-41-1) |
| § | |

## **O P I N I O N**

Jesus Nieves appeals the trial court's denial of the relief requested in his application for a writ of habeas corpus filed pursuant to Article 11.072 of the Code of Criminal Procedure. *See* TEX.CODE CRIM.PROC.ANN. art. 11.072 (West 2005). For the reasons that follow, we affirm.

### **FACTUAL SUMMARY**

In 2004, Nieves waived his right to a jury trial and entered a negotiated plea of guilty to possession of child pornography. The trial court found the evidence substantiated a finding of guilt, but it deferred entering an adjudication of guilt and placed Nieves on deferred adjudication community supervision for ten years. In 2010, Nieves filed an application for writ of habeas corpus based on allegations of ineffective assistance of counsel. More specifically, Nieves alleged that his attorney rendered deficient performance because he failed to pursue a motion to suppress evidence seized as the result of an illegal encounter with the police and a search

conducted pursuant to a warrant. Nieves argued that his guilty plea was involuntary because trial counsel did not advise him that he had failed to obtain a ruling on a motion to suppress filed in the case. Further, Nieves alleged that his attorney's performance was deficient because he failed to advise Nieves that his guilty plea would subject him to deportation or removal from the United States. The trial court did not conduct a hearing and denied relief based on its review of the habeas application and the documents in the court's file. The court entered written findings of fact and conclusions of law.

## STANDARD OF REVIEW

In a post-conviction writ of habeas corpus proceeding, the applicant bears the burden of proving, by a preponderance of the evidence, the facts that would entitle him to relief. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex.Crim.App. 2002). We apply an abuse of discretion standard when reviewing a trial court's decision to grant or deny habeas relief. *Ex parte Wheeler*, 203 S.W.3d 317, 323 (Tex.Crim.App. 2006).

The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Ex parte Peterson*, 117 S.W.3d 804, 819 n.68 (Tex.Crim.App. 2003), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex.Crim.App. 2007). As the fact finder, the trial court may accept some, all, or none of a witness's testimony. *See id*. We afford almost total deference to a trial court's determination of the historical facts that the record supports especially when such findings of fact are based on an evaluation of credibility and demeanor. *Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex.Crim.App. 2011), *citing Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). We afford that same level of deference to a trial court's ruling on application of law to fact questions, also known as mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and

demeanor.  *Ex parte Peterson*, 117 S.W.3d at 819.  We review *de novo* those mixed questions of law and fact that do not depend upon evaluation of credibility and demeanor.  *Id.*

## FAILURE TO PURSUE SUPPRESSION OF EVIDENCE

Nieves raises seven issues related to his contention that the trial court abused its discretion by denying habeas relief based on his claim that trial counsel was ineffective because he failed to pursue a motion to suppress evidence.  In Issues One through Three, Nieves asserts that the record does not support the trial court's findings that:  (1) trial counsel was aware of the grounds for suppressing the evidence; (2) Nieves's assertion that his attorney did not discuss the suppression remedy and how it might apply to the facts of his case was not credible; (3) Nieves's assertion that he would have not pled guilty had his attorney discussed the suppression remedy and how it might apply to the facts of his case was not credible; and (4) Nieves, by foregoing his suppression motion, was able to enter into a plea agreement for deferred-adjudication in order to avoid going to trial where he risked a possible life sentence.  In Issues Five through Eight, Nieves challenges the trial court's determination that he was not denied effective assistance where counsel did not pursue suppression of the evidence on the theories that Nieves was unlawfully detained and law enforcement officers engaged in an unlawful pre-warrant search.

*Ineffective Assistance of Counsel*

To be entitled to habeas relief on the basis of ineffective assistance of counsel, a petitioner must prove by a preponderance of the evidence that:  (1) counsel's performance was deficient; and (2) he was prejudiced as a result.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  To establish deficient performance, the petitioner must show that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms.  *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064-65.  We

presume that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*. at 689, 104 S.Ct. at 2065. To establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Perez v. State*, 310 S.W.3d 890, 893 (Tex.Crim.App. 2010).

Nieves alleges counsel failed to secure a ruling on suppression issues. To satisfy *Strickland*, an appellant alleging his trial counsel was ineffective for failing to file a motion to suppress or obtain a ruling on a suppression issue must show by a preponderance of the evidence that the motion would have been granted and it would have changed the outcome of the case. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex.Crim.App. 1998). Additionally, Nieves was required to prove that he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *Ex parte Pool*, 738 S.W.2d 285, 286 (Tex.Crim.App. 1987).

*Counsel Aware of the Grounds for Suppression*

We begin by addressing Nieves's issues related to the findings of fact. In Issue One, he challenges the trial court's seventh finding of fact, which states:

> 7. Trial counsel's motions to suppress likewise indicate that he was likewise aware of the grounds for suppressing the evidence in this case.

Nieves's trial counsel filed a written motion to suppress "all evidence seized, including statements made, on or about September 17, 2003, from [Nieves's] residence." Thus, Nieves's trial counsel actually sought to suppress the same evidence that Nieves is arguing should be suppressed. Further, he based his motion to suppress on the same grounds as those relied on by Nieves in his habeas application. Trial counsel based the suppression motion on the Fourth Amendment, Article I, Section 9 of the Texas Constitution as well as Article 38.23 of the Code of Criminal Procedure, indicating that trial counsel in fact recognized that the evidence could be

suppressed had it been obtained, directly or indirectly, as a result of conduct that violated these constitutional provisions. Trial counsel also argued that the evidence should be suppressed because "the warrant issued by the judicial magistrate was based on an affidavit which contained information unlawfully and illegally obtained by law enforcement officers." We conclude that the record supports the trial court's determination that trial counsel was aware of the grounds for suppressing the evidence. Issue One is overruled.

*Credibility Determination*

In Issue Two, Nieves challenges two findings of fact addressing his credibility. Specifically, findings of fact ten and eleven state:

> 10. Nieves' assertion that his attorney did not discuss the suppression remedy and how it might apply to the facts of his case is not credible.

> 11. Nieves' assertion that he would have not plead guilty had his attorney discussed the suppression remedy and how it might apply to the facts of his case is not credible.

Even though Nieves's affidavit was not refuted, the trial court was not required to believe it. *See State v. Ross*, 32 S.W.3d 853, 857 (Tex.Crim.App. 2000)(trial court, as fact finder, is not compelled to believe uncontroverted testimony); *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex.Crim.App 1996)(in habeas proceeding, the trial judge determines the credibility of the witnesses). In *State v. Sheppard*, 271 S.W.3d 281, 286 (Tex.Crim.App. 2008), the Court of Criminal Appeals stated that when a trial court makes an explicit credibility finding, the reviewing court is required to give deference to that credibility determination. Under these standards, an appellate court does not have much leeway to disregard the trial court's findings within the Article 11.072 context. *Ex parte Garcia*, 353 S.W.3d at 788. This level of deference

is required even when no witnesses testify and all of the evidence is submitted in written affidavits. *Ex parte Wheeler*, 203 S.W.3d at 325-26.

Here, the trial court did not believe Nieves's claim that he had not discussed the suppression remedy available with his attorney as well as its application to his case. We are required to defer to this express credibility determination. We overrule Issue Two.

*Avoidance of a Possible Life Sentence*

In Issue Three, Nieves challenges the trial court's twelfth finding of fact, which reads:

12. By foregoing his suppression motions, Nieves was able to enter into a plea agreement for deferred-adjudication in order to avoid going to trial where he risked *a possible life sentence*. [Emphasis added].

Nieves was charged with one count of possession of child pornography, a third degree felony. TEX.PENAL CODE ANN. § 43.26(a), (d)(West Supp. 2012). The maximum sentence for a third degree felony is imprisonment for ten years. TEX.PEN.CODE ANN. § 12.34(a)(West 2011). Thus, Nieves did not face a possible life sentence, but a maximum of ten years for the charged offense. The trial court correctly found that Nieves was able to enter into a plea agreement for deferred adjudication by foregoing his motion to suppress, but the court's finding that he avoided a possible life sentence by pleading guilty is erroneous. We therefore will not defer to this part of the fact finding in reviewing the remaining issues related to Nieves's claims of ineffective assistance of counsel. *See Ex parte Reed*, 271 S.W.3d 698, 727-28 (Tex.Crim.App. 2008) (observing that the Court of Criminal Appeals, as the reviewing court in a habeas corpus proceeding, could defer to phrases in a particular fact-finding supported by the record, and reject those that were not).

The State argues that the erroneous portion of the fact-finding is harmless because it did not contribute significantly to the trial court's ultimate conclusion that Nieves failed to prove that

he was denied the effective assistance of counsel. We agree. As will be discussed in more detail in our review of Issues Five through Eight, Nieves failed to prove the prejudice component of his ineffective assistance of counsel claim because he did not prove that the motion to suppress would have been granted, or that he would not have pled guilty and would have insisted on going to trial. We overrule Issue Three.

*Trial Court's Failure to Address Ineffective Assistance Claim*

In Issue Five, Nieves argues that the trial court failed to address his ineffective assistance of counsel claim based on counsel's alleged failure to pursue suppression of the confession and child pornography seized from Nieves's bedroom on the ground that the evidence was obtained as the direct or indirect result of an illegal detention. The record and the trial court's findings contradict Nieves's claim. Counsel specifically sought to suppress Nieves's statement and evidence seized from his residence pursuant to a search warrant because the warrant "was based on an affidavit which contained information unlawfully and illegally obtained by law enforcement officers." The trial court found that Nieves's counsel filed three motions to suppress and those motions indicate counsel was aware of the grounds for suppression. In effect, the trial court found that counsel's performance was not deficient because he moved to suppress the evidence on the same grounds asserted by Nieves in his writ application. Because the trial court did not fail to address Nieves's ineffective assistance of counsel claim, we overrule Issue Five.

*Illegal Detention*

In Issues Six and Seven, Nieves contends that the trial court erred by concluding the motion to suppress would not have been granted and he would not have been entitled to an Article 38.23 jury instruction. This part of Nieves's suppression argument is based on his

assertion that he was illegally detained by a police officer and required to provide his driver's license.

The evidence showed that an El Paso Police Officer, Elizabeth Puga, attended her daughter's dance recital. Puga observed Nieves recording the entire dance performance on a video camera and she recognized him as the same man who had attended and recorded the entire dance recital the previous year. After the show, Puga followed Nieves to the lobby and saw him grab some newspaper from the information desk and wrap it around his video camera.

Puga approached Nieves outside the lobby and asked him whether he had any children or family performing in the recital. Nieves said he did not but explained that he had been recording the performance for a friend whose daughter was in the show. Nieves did not know the name of his friend's daughter or what group she had performed with during the recital. Puga introduced herself but did not identify herself as a police officer. Nieves told her that his name was Carlos Hernandez. Puga continued to make casual conversation with Nieves, but he became increasingly nervous and finally asked her, "Is that it?" before walking away. She hid behind some cars and watched Nieves walk into the public restrooms at the end of the parking lot. When Nieves walked out, he still appeared nervous and looked all around to see whether anyone was watching him.

Puga saw another off-duty officer in the parking lot and she asked him to assist her in identifying Nieves. She quickly explained to Officer Mendoza her encounter with Nieves in the lobby. Puga then approached Nieves's car, pulled out her badge, and knocked on the driver's side window. After identifying herself, Puga asked Nieves for his I.D. and explained why she needed to see it. Nieves contradicted Puga's account, stating in his writ affidavit that Puga and Mendoza ordered him to exit his vehicle and produce his driver's license. After determining

Nieves did not have any warrants, Puga and Mendoza continued talking to Nieves. Nieves explained that he was just videotaping because he wanted to and it was not against the law. Puga told Nieves that she had recognized him from the previous year's dance recital and explained to him that she found it odd he had attended these recitals when he did not have any connection to them. Nieves acknowledged his presence at the previous year's performance and continued to reiterate that he had not violated any laws. He also said that videotaping and taking photographs was just something he liked to do. Puga subsequently forwarded information about the encounter with Nieves to another police officer.

Officer Mendoza spoke with Officer Parra from the Sex Offenders Unit and told him about the incident with Nieves. Parra determined that Nieves was employed as a custodian at Hillcrest Middle School and notified the police officer on duty at the school about the officers' encounter with Nieves at the dance recital. Parra and Officer Arias went to the school and spoke with Nieves about his videotaping the children. Consistent with what he had told Puga and Mendoza, Nieves responded that he simply liked to record different events and he was not doing anything wrong. He admitted that he had had no reason for being at the dance performance. The officers asked Nieves for consent to view the recording to alleviate their concern he had videotaped the children for an inappropriate purpose, but Nieves told them he had already erased it.

Because the interview raised the officers' suspicions, they subsequently went to Nieves's residence where his mother answered the door. Nieves and his mother lived together in the home. Nieves stated in his writ affidavit that he paid the rent for the home and allowed his ninety-three-year-old mother to live with him because of her age. The officers told Ms. Nieves that her son was being investigated because of possible inappropriate videotaping of the dance

recital and she signed a written consent to search her home. Ms. Nieves informed the officers that she was used to finding nude photos of women lying around Nieves's room and she would throw them away and get upset at her son. The door to Nieves's bedroom was open and she allowed the officers to enter. Parra asked who owned the computer on the desk and Ms. Nieves responded that Nieves had purchased it with her social security money and without her permission. However, this evidence is disputed because Nieves stated in his writ affidavit that he had purchased the computer with his own money. Officer Parra asked Ms. Nieves for permission to look inside the computer for any suspicious photographs. Ms. Nieves gave her permission and Parra pushed a key on the keyboard to awaken the computer from sleep mode. Parra opened a folder titled "pre-kinder photos" and saw a photo of a naked three-year-old girl lying on her back with her legs spread open. The officers immediately stopped looking inside the computer and contacted their supervisor, Sgt. Graves, regarding the photo they had found. Sgt. Graves advised them to stop searching until the detective assigned to the case obtained a warrant. That same day, a search warrant for the home was obtained and executed. The search warrant affidavit included a description of Puga's initial encounter with Nieves at the dance recital. Nieves voluntarily drove to the police station in his own car and spoke with the officers while the home was being searched. The officers seized numerous items of child pornography including magazines, VHS tapes, and photographic images.

Not all encounters between the police and citizens implicate the Fourth Amendment's protection against unreasonable seizures. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *State v. Woodard*, 341 S.W.3d 404, 411 (Tex.Crim.App. 2011); *State v. Garcia-Cantu*, 253 S.W.3d 236, 238 (Tex.Crim.App. 2008). Unlike investigative detentions and arrests, which are seizures for Fourth Amendment purposes, an encounter is a consensual

interaction that the citizen may terminate at any time. *Woodard*, 341 S.W.3d at 411; *Johnson v. State*, 912 S.W.2d 227, 235 (Tex.Crim.App. 1995). In an encounter, a police officer may approach an individual in a public place, ask him whether he is willing to answer questions, and pose questions to the person, if he is willing to listen. *State v. Perez*, 85 S.W.3d 817, 819 (Tex.Crim.App. 2002). An encounter does not trigger the protection of the Fourth Amendment so long as a reasonable person would feel free to disregard the police and go about his business. *See Hunter v. State*, 955 S.W.2d 102, 104 (Tex.Crim.App. 1997); *Gurrola v. State*, 877 S.W.2d 300, 302-03 (Tex.Crim.App. 1994).

A detention occurs when a person yields to an officer's show of authority or when a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. *Florida v. Bostick*, 501 U.S. 429, 436, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991); *California v. Hodari D.*, 499 U.S. 621, 629, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991); *State v. Velasquez*, 994 S.W.2d 676, 678-79 (Tex.Crim.App. 1999); *Johnson v. State*, 912 S.W.2d 227, 235 (Tex.Crim.App. 1995). A detention occurs when a person in a parked car complies with a police order to roll down the window, open the door, or get out of the car, *Ebarb v. State*, 598 S.W.2d 842, 850 (Tex.Crim.App. [Panel Op.] 1979), but a detention does not occur if an officer merely approaches a parked vehicle and knocks on the window. *Merideth v. State*, 603 S.W.2d 872, 873 (Tex.Crim.App. [Panel Op.] 1980).

Officer Puga's initial conversation with Nieves in the lobby was a mere encounter. With regard to the subsequent contact in the parking lot, Puga approached Nieves's vehicle, showed him her badge and knocked on the window, but there is nothing in her report to indicate she ordered him to roll down the window or open the door. Based on Puga's description of the events, the second conversation with Nieves was also a consensual encounter and the trial court

did not err by concluding that the motion to suppress would not have been granted. Nieves's description, if believed, showed an investigative detention. The trial court did not make any specific findings to indicate whether the court concluded this was a mere encounter or an investigative detention. Even if we assume the second encounter amounted to an investigative detention, it is supported by a reasonable suspicion. An investigative detention requires an officer to have a reasonable suspicion to believe that an individual is involved in criminal activity. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). The purpose of an investigative detention is to establish a person's identity or to maintain the status quo, while an officer obtains more information. *Comer v. State*, 754 S.W.2d 656, 657 (Tex.Crim.App. 1986). The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which, taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *Id.*

The evidence showed that Nieves attended the dance recital alone and recorded the entire event as he had the previous year. After the show, Puga observed Nieves wrap his camera in a newspaper as if to hide it and he became nervous when she engaged him in casual conversation and questioned him about why he was recording the dance recital. Nieves initially claimed that he was recording the dance recital for a friend but did not know the name of his friend's daughter or the part of the show in which she was performing. Nieves appeared nervous even after he exited the restrooms and he looked around to see whether Puga was watching him. Under the circumstances, Puga had a reasonable suspicion to believe Nieves was involved in criminal activity and her request for Nieves to produce his driver's license was reasonable. The trial court did not abuse its discretion by concluding that Nieves's motion to suppress would not have been

granted and he would not have been entitled to an Article 38.23 jury instruction had he taken his case to trial. Therefore, Nieves failed to establish the prejudice prong of *Strickland*. Issues Six and Seven are overruled.

*Third-Party Consent to Search*

In Issue Eight, Nieves argues that the trial court erred by concluding that his motion to suppress would not have been granted on the ground that the warrant is based on evidence illegally obtained by the officer's warrantless search of his computer. We understand Nieves to argue that his mother had authority to consent to a search of the premises but she did not have authority to consent to a search of his room or the computer.

Consent searches are an established exception to the warrant and probable cause requirements of the Fourth Amendment. *Balentine v. State*, 71 S.W.3d at 772, *citing Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). A third party may properly consent to a search when he has control over and authority to use the premises being searched. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974); *Balentine*, 71 S.W.3d at 772. The consent of one who possesses common authority over premises or effects is valid as against an absent, non-consenting person with whom that authority is shared. *Matlock*, 415 U.S. at 170, 94 S.Ct. at 993.

A party's legal property interest does not determine authority to consent. *Welch v. State*, 93 S.W.3d 50, 53 (Tex.Crim.App. 2002). Authority to consent is instead derived from the mutual use of the property. *Id.* The Supreme Court explained in *Matlock* that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. *Matlock*, 415 U.S. at 171 n.7, 94 S.Ct. at 993. Therefore, the relevant inquiry is not

which party has a superior interest in the property, but whether the party giving consent has joint access to and control of the property for most purposes. *Welch*, 93 S.W.3d at 53. In determining whether a third party may give consent to a search, we examine whether the third party had the authority to use the premises. *Balentine*, 71 S.W.3d at 772.

Both Nieves and his mother lived at the house. Nieves stated in his writ affidavit that: "My mother did not have authority to give these officers the right to search my bedroom . . . ." Nieves did not state any facts which support this legal conclusion. There is nothing in his statement to indicate that he restricted his mother's access to his room and his effects contained within that room, including the computer. The officers' reports reflect that the door to the room was open and his mother gave them permission to enter. Further, the computer was booted up and it was not password-protected even though Nieves was not present. Based on the these facts, the record supports a conclusion that Ms. Nieves had common authority to consent to a search of the home, including Appellant's room and the effects contained in that room. The record supports the trial court's conclusion that the motion to suppress would not have been granted. We overrule Issue Eight.

## VOLUNTARINESS OF THE GUILTY PLEA

Nieves raises three issues related to the voluntariness of his guilty plea.

### *Failure to Advise -- Suppression Issues*

In Issue Nine, he contends that the trial court erred in failing to address his claim that his guilty plea was not knowing and voluntary because trial counsel failed to advise him that he was "entitled to a ruling on all suppression issues presented before he pled guilty to the indicted charge." The State responds that Nieves failed to raise this claim in his writ application.

The primary focus of Nieves's writ application is trial counsel's alleged failure to seek suppression of the evidence on the grounds already addressed in Issues Five through Eight. He also raised one ground in writ application regarding trial counsel's failure to advise him "of the necessity that he secure a ruling on all suppression issues before entering a guilty plea to the indicted charged." He did not include any allegation in his writ application that trial counsel's performance was deficient because he failed to advise Nieves he was "entitled to a ruling on all suppression issues." The trial court cannot be faulted for not addressing an issue Nieves did not raise in his writ application. *See* TEX.R.APP.P. 33.1. Issue Nine is overruled.

*Failure to Advise -- Immigration Consequences*

In Issue Four, Nieves challenges finding of fact number 13 where the trial court found that:

> 13. Nieves was admonished in accordance with article 26.13 of the Code of Criminal Procedure and knew that if he pled guilty or were convicted of possession of child pornography, he would face removal from the United States because he was not a U.S. Citizen.

Article 26.13 of the Texas Code of Criminal Procedure requires that prior to accepting a guilty plea, the trial court below must admonish the defendant of the consequences of his plea. TEX.CODE CRIM.PROC.ANN. art. 26.13(a)(West Supp. 2012). The admonitions can be provided either orally or in writing. TEX.CODE CRIM.PROC.ANN. art. 26.13(d). Under Article 26.13(a)(4), the court must admonish a defendant of: "the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law." TEX.CODE CRIM.PROC.ANN. art. 26.13(a)(4). The written admonishments included the following statement: "I further understand that if I am not a citizen of the United States of America a plea of guilty or nolo contendere to this offense in this cause may result in my being

- 15 -

deported, excluded from further admission into the United States, or denied naturalization under Federal law." Nieves placed his signature at the conclusion of the written admonishments. Further, the trial court advised Nieves orally during the guilty plea that: "If you are not a citizen of the United States, your plea of guilty may result in your deportation, your exclusion from admission to the United States or denial of naturalization under Federal law." Nieves told the trial court that he understood. The record supports the trial court's finding that Nieves was admonished in accordance with Article 26.13 and he understood the consequences of pleading guilty. We overrule Issue Four.

*Counsel's Failure to Advise Nieves*

In his final issue, Nieves complains that the trial court abused its discretion by finding that trial counsel did not render ineffective assistance of counsel on the ground he failed to advise Nieves of the immigration consequences of a guilty plea. He cites *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), in support of this argument.

In *Padilla*, the Supreme Court held that the Sixth Amendment requires an attorney for a criminal defendant to advise his client of the risk of "automatic" deportation as a consequence of a guilty plea. *Padilla,* 559 U.S. at ---, 130 S.Ct. at 1483. Since *Padilla* announced a new rule, it does not apply retroactively to the collateral review of a state criminal conviction that was final when the *Padilla* opinion was issued on March 31, 2010. *Chaidez v. United States*, --- U.S. ---, 133 S.Ct. 1103, 1111, 185 L.Ed.2d 149 (2013); *State v. Guerrero*, --- S.W.3d ----, 2013 WL 2419595 at *6 (Tex.Crim.App. 2013); *Ex parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex.Crim.App. 2013). Nieves entered his plea of guilty on February 24, 2004 and the trial court placed him on deferred adjudication in accordance with the plea bargain on that same date. For purposes of *Padilla*, Nieves's conviction was final on February 24, 2004. *See State v. Guerrero*,

--- S.W.3d ---, 2013 WL 2419595 at *6. The trial court did not abuse its discretion by concluding that Nieves failed to establish ineffective assistance of counsel claim based on his claim that counsel failed to advise him of the immigration consequences of his guilty plea as required by *Padilla*. We overrule Issue Ten and affirm the judgment of the trial court.


July 24, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating

(Do Not Publish)