

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00113-CR

———————————————————

RICHARD DAVID ROBINSON, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 9
Tarrant County, Texas
Trial Court No. 1560062

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

By information, the State charged Richard David Robinson with the offense of driving while intoxicated with an alcohol concentration of 0.15 or more, a Class A misdemeanor. *See* Tex. Penal Code Ann. § 49.04(d). After the trial court overruled Robinson's motion to suppress and request for a jury instruction under Texas Code of Criminal Procedure article 38.23, a jury found him guilty, and the trial court sentenced him to ninety days in jail (probated for two years) and a fine of $1,500.

On appeal, Robinson asserts that the trial court erred in denying his motion to suppress and requested Article 38.23 charge. We hold that both the facts and the law support the trial court's rulings, overrule Robinson's contentions, and affirm the trial court's judgment.

### II. BACKGROUND

On August 29, 2018, Robinson purchased three bottles of Steel Reserve[1] at a QuikTrip in Euless, Texas. Later that evening, Nicholas Kubik-Powell (Nick), a manager at the QuikTrip, called 911 after going outside and noticing Robinson unconscious in the driver's seat of a white Ford four-door vehicle. Nick also noticed an empty Steel Reserve bottle on the vehicle's dashboard. Euless Police Officers

---

[1]Steel Reserve is a brand of malt liquor. *See Wood v. State*, No. 01-13-00845-CR, 2014 WL 5780273, at *1 (Tex. App.—Houston [1st Dist.] Nov. 6, 2014, pet. ref'd) (mem. op., not designated for publication).

Blake Mitchell and Isiah Moala arrived at the QuikTrip shortly thereafter and found Robinson unconscious in the driver's seat of a white Ford four-door truck. The truck was parked and running. Mitchell walked around the truck and tried the door handles but found the doors to be locked. He then tapped on the driver's-side window, and Robinson awoke. Both officers instructed him to open the door, but Robinson did not comply.

Mitchell then moved his patrol car directly behind Robinson's truck to secure the truck in place.[2] Robinson refused to comply with the officers' commands that he open the door, even after Mitchell warned him that they would break a window to his truck if he did not get out. Robinson told Mitchell to "break it." Moala then broke the rear-seat window on the passenger side, unlocked one of the doors, and climbed inside. Robinson, meanwhile, shifted his truck into reverse and backed into Mitchell's patrol vehicle, then shifted into drive and drove forward a short distance before coming to an abrupt stop. Mitchell pulled Robinson out of the truck and arrested him. A breath test taken at the jail showed Robinson's alcohol concentration to be 0.243 grams of alcohol per 210 liters of breath.

At his trial, Robinson moved to suppress his detention and arrest. He argued that the officers did not have reasonable suspicion to detain him or probable cause to

---

[2]Mitchell testified at the trial that this is a police tactic they call "positive contact" and is meant to minimize the impact in the event a sleeping driver were to "just wake up and slam [his] car in reverse or drive."

arrest him. The trial court carried Robinson's motion and, after the close of the evidence, overruled the motion and found, "based upon the facts and circumstance contained in the record[,] that it was reasonable for the officers to initiate a detention and further [that] a reasonable person in the officer's position would have had probable cause to believe the defendant had committed an offense and was subject to arrest." Robinson then requested that an Article 38.23 instruction be included in the jury charge:

> I believe the officer said the detention was made based on a possibly intoxicated person. I believe that the first witness, the actual 911 caller, said he didn't know whether the person was intoxicated or not, he could have just been asleep. He didn't believe he was intoxicated. In fact, he doesn't even say he was intoxicated. Again, both the officers testified they came and saw somebody asleep in the truck. Even at one point when the State objected to my asking about him being asleep you had told them in the objection that it is a fact issue whether somebody was passed out or asleep. We believe that portion -- that was a determination for the jury. Was he -- Was this a lawful detention based on him -- the fact question of whether he -- did he appear intoxicated. And so we would ask for the 38.23 instruction be given to the jury.

The trial court overruled this request and submitted the case to the jury, who then convicted Robinson.

### III. DISCUSSION

Robinson's issues on appeal center around the legality of his detention at the QuikTrip. The law recognizes three distinct types of interactions between the police and citizens: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and

4

duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests—the most intrusive of Fourth Amendment seizures—that are reasonable only if supported by probable cause. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013).

## A. Robinson's Motion to Suppress

In his first issue, Robinson argues that the trial court erred in failing to grant the motion to suppress his detention and arrest. The State responds that the initial interaction between Mitchell and Robinson was a consensual encounter, not a "seizure" under the Fourth Amendment, and that Mitchell developed reasonable suspicion to detain Robinson during this consensual encounter.

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). Because the trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony, *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007), we defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor, *Martinez*, 570 S.W.3d at 281. Whether the totality of circumstances supports reasonable suspicion or probable cause is a legal determination we review de novo. *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008).

5

When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we infer the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *Johnson*, 414 S.W.3d at 192; *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819. Here, the trial court did not make explicit fact findings other than what was stated on the record when the trial court denied Robinson's motion, and neither party timely requested further findings and conclusions.

## 1. At the point when Robinson was "seized," Officer Mitchell had reasonable suspicion to detain him.

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. A

6

defendant seeking to suppress evidence on Fourth Amendment grounds[3] bears the initial burden to produce some evidence that the government conducted a warrantless search or seizure that he has standing to contest. *Rawlings v. Kentucky*, 448 U.S. 98, 104–05, 100 S. Ct. 2556, 2561 (1980); *State v. Martinez*, 569 S.W.3d 621, 623 (Tex. Crim. App. 2019). Once the defendant does so, the burden shifts to the State to prove either that the search or seizure was conducted pursuant to a warrant or was otherwise reasonable, if warrantless. *Martinez*, 569 S.W.3d at 624. There is no evidence that Robinson was seized pursuant to a warrant, so the State bore the burden to show that the detention and arrest were reasonable under the applicable standards.

A detention may be justified if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1879–80 (1968); *Johnson v. State*, 622 S.W.3d 378, 384 (Tex. Crim. App. 2021). An officer conducts a lawful temporary detention when he reasonably suspects that an individual is violating the law. *See Johnson*, 622 S.W.3d at 384. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific,

---

[3]Although Robinson based his motion to suppress at trial on "both the United States and Texas Constitution[s]," he relies only on the Fourth Amendment to the United States Constitution and related case law to support his appellate argument on this point. When an appellant's argument is based on both the federal and state constitutions but does not cite any argument or authority under the state constitution, we review only the federal arguments. *Welch v. State*, 93 S.W.3d 50, 52 & n.5 (Tex. Crim. App. 2002). Therefore, we analyze Robinson's first point of error as a federal constitutional issue only.

articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Id.* This is an objective standard that disregards the detaining officer's subjective intent and looks solely to whether the officer has an objective basis for the stop. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017).

Robinson bases his position that the State failed to establish reasonable suspicion in this case on "the fact that right off the bat, the State failed to prove through the 911 call that the officers were acting properly and in response to a welfare call." This fact is irrelevant, however, because (1) the State's burden to justify the warrantless detention at issue was not to show the propriety of or subjective motivation for the officers' actions but to provide an objectively reasonable basis for the seizure, and (2) the State did not need the 911 call to meet this burden.[4]

A "seizure" under the Fourth Amendment does not occur until (1) a reasonable person would believe he or she was not free to leave, and (2) the person being seized has either yielded to the officer's show of authority *or* been physically forced to yield. *Johnson v. State*, 912 S.W.2d 227, 236 (Tex. Crim. App. 1995). When a

---

[4]For all the references to Nick's 911 call, we note that neither party ever offered the audio of the call into evidence (for the record only or for all purposes). Because we hold that the police had reasonable suspicion to detain Robinson when they did and probable cause to arrest him when they did, based on what they personally observed at the scene, we need not address whatever was said on the 911 call.

suspect refuses to yield to physical force or an officer's show of authority, there is no seizure. *State v. Castleberry*, 332 S.W.3d 460, 469 (Tex. Crim. App. 2011).

Here, when Mitchell first arrived at the QuikTrip and approached Robinson's truck, Robinson was asleep. When Moala arrived and walked up to the truck, Robinson was still asleep. As the sleeping Robinson was unaware of the officers' presence outside his vehicle, he could not have yielded to any show of authority, *see York v. State*, 342 S.W.3d 528, 534 n.16 (Tex. Crim. App. 2011) (citing, with approval, cases holding that a sleeping or unconscious suspect is not "seized" because he cannot submit to a "show of authority" of which he is unaware), and at this point, the officers had not used physical force against him. It was not until he awoke and Mitchell told him, "You're not goin' anywhere," and he yielded to Mitchell's authority by remaining in place that Robinson was "seized."[5] The question for the trial court was, and for us now is, whether at that point the officers had specific and articulable facts that, when combined with rational inferences from those facts, would have led

---

[5]Mitchell testified that, as soon as he arrived, Robinson was detained and was not free to leave. Lack of freedom to leave, though, is only half of the equation for a detention or seizure that implicates the Fourth Amendment, and the standard is whether *a reasonable person would believe* that he was not free to leave. *Johnson*, 912 S.W.2d at 236. Regardless of what Mitchell subjectively believed he was doing when he first pulled into that parking lot, because he had not yet employed physical force, Robinson was not seized/detained until he submitted to Mitchell's "show of authority." *See Brendlin v. California*, 551 U.S. 249, 254–55, 127 S. Ct. 2400, 2405–06 (2007) ("[T]here is no seizure without actual submission" to "a show of authority," and the test is whether "a reasonable person would have believed that he was not free to leave" or whether "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.").

9

them to reasonably conclude that Robinson was, had been, or soon would be engaged in criminal activity. *See Johnson*, 622 S.W.3d at 384 (setting out standards for reasonable suspicion).

Unsurprisingly, Robinson and the State rely on different cases to support their respective arguments; Robinson likens his case to *State v. Griffey*, 241 S.W.3d 700 (Tex. App.—Austin 2007, pet. ref'd), while the State cites *York*. Both cases are distinguishable from this one, but the facts of *York* more closely resemble the circumstances present in Robinson's case. In *York*, a patrol officer observed a car parked partially on the sidewalk immediately in front of an Exxon store around 3:00 a.m., with the headlights on and the engine running. 342 S.W.3d at 530–31. The officer approached the car and saw that the defendant was in the car asleep with the seat laid back. *Id.* at 531. The Court of Criminal Appeals found these circumstances sufficient to give rise to a reasonable suspicion that would permit an investigative detention:

> From the circumstances present here, Officer Johnson could reasonably suspect that appellant was intoxicated. And with the engine running, an intoxicated driver might have awakened, and in his stupor, driven into the store. Or he might have returned to the road, where he would pose a threat to others who were traveling. It would be reasonable to suspect that appellant posed a danger to himself or others.

*Id.* at 537. These concerns proved realistic in the instant case; within minutes of waking up, Robinson backed his truck into Mitchell's vehicle, spinning his wheels so

hard that the friction with the pavement created smoke, and then drove forward, over the curb, with Moala inside his vehicle.

The facts here are not exactly like those in *York*; Robinson was legally parked in a parking space between 7:00 and 7:30 p.m., and his headlights were not on. However, Mitchell and Moala both testified that they also observed an empty or nearly empty Steel Reserve bottle on the dashboard of Robinson's truck. Further, before detaining Robinson, the officers could see that he was slumped over the steering wheel of the truck and unresponsive, even as they tried the door handles and talked to one another right outside his truck. Robinson did not awaken until Mitchell rapped on the window right next to where he was sleeping. Based on the totality of the circumstances, these facts—in conjunction with the fact that Robinson's truck was running and the rational inferences from those facts—supported a reasonable suspicion to detain Robinson.[6]

The issue in *Griffey* was whether the police had lawfully detained the defendant based on a report from a fast-food-restaurant manager that a person was passed out

---

[6]Under the "totality of the circumstances" test, we are bound to consider the other attendant circumstances, including those militating against the trial court's finding, such as the facts that neither of the officers saw Robinson consume any alcohol or could say how long his truck had been parked in that location. These circumstances, however, do not vitiate the reasonable suspicion that objectively arose when the officers witnessed Robinson unconscious and slumped over the steering wheel of a running truck with an alcohol bottle on the dashboard. *Cf. York*, 342 S.W.3d at 537 ("Although Officer Johnson did not smell alcohol as he approached the car, that fact did not cause reasonable suspicion to dissipate, in part because appellant could still have been intoxicated by drugs.").

behind the wheel of a vehicle in the restaurant's drive-through lane. 241 S.W.3d at 702. The officer testified that he was not given any other information other than that someone was passed out behind the wheel in the drive-through lane. *Id.* However, the defendant was awake at the time he arrived, and her vehicle was sitting next to the drive-through window. *Id.* She was arrested and charged with driving while intoxicated, but the trial court granted her pretrial motion to suppress. *Id.* at 702–03. The Austin Court of Appeals affirmed, holding that Griffey was unlawfully detained in violation of her rights under the Fourth Amendment. *Id.* at 707.

Contrary to what Robinson asserts in his brief, the facts in *Griffey* do not "align[] with the case at bar." The information relayed from Nick to the officers via 911 and the officers' subjective motivation in detaining Robinson are immaterial because, like in *York*, and unlike in *Griffey*, **what the police personally observed** prior to detaining Robinson sufficed to provide reasonable suspicion for a lawful investigative detention.[7] *See York*, 342 S.W.3d at 537 n.31 (distinguishing *Griffey*). For this reason, we need not address Robinson's arguments on the "welfare check" or "community caretaking" issue.[8] The State did not have to show that the officers were

---

[7]Robinson contends in his brief that his "detention/seizure must be justified by specific criminal law violations," but this does not correctly state the law. An officer with reasonable suspicion or probable cause to suspect criminal activity is afoot does not need the additional justification of a law violation to make a lawful investigative detention. *Crittenden v. State*, 899 S.W.2d 668, 672 (Tex. Crim. App. 1995).

[8]As part of his "community caretaking" function, a police officer may stop and assist an individual whom a reasonable person—given the totality of the

12

engaged in a community-caretaking function when they detained Robinson because they had reasonable suspicion to detain him, and therefore their reasons for being at the QuikTrip before the seizure do not matter. Police officers are as free as any other citizen to approach other citizens to ask for information or cooperation. *See Wade*, 422 S.W.3d at 667.

### 2. The police had probable cause to arrest Robinson.

A warrantless arrest, as opposed to a detention, is unreasonable per se unless it fits into one of a "few specifically established and well delineated exceptions." *Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135 (1993)). A police officer may arrest an individual without a warrant only if probable cause exists with respect to that individual and the arrest falls within one of the exceptions set out in the Code of Criminal Procedure. *Torres*, 182 S.W.3d at 901; *see* Tex. Code Crim. Proc. Ann. arts. 14.01–.03, 14.04.

To have probable cause for a warrantless arrest, an officer must reasonably believe, based on facts and circumstances within the officer's personal knowledge—

---

circumstances—would believe is in need of help. *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999). Police sometimes call this a "welfare check." *See, e.g.*, *Leming v. State*, 493 S.W.3d 552, 555 (Tex. Crim. App. 2016). Mitchell testified that he knew he was dispatched to the QuikTrip "either for an intoxicated subject or a welfare check," but he could not remember exactly what dispatch said. Robinson has argued both at trial and on appeal that Mitchell was not exercising his community-caretaking function.

whether through direct observation, from reasonably trustworthy information, or both—that a person has committed or is committing an offense. *State v. Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011); *Torres*, 182 S.W.3d at 901–02. The officer must base probable cause on specific, articulable facts rather than the officer's mere opinion. *Torres*, 182 S.W.3d at 902. We use the "totality of the circumstances" test to determine whether probable cause existed for a warrantless arrest. *Id.*

Having concluded that the officers lawfully detained Robinson based on reasonable suspicion, we also conclude that the officers had probable cause for the arrest. After being detained, Robinson stymied the officers' efforts to investigate by refusing to answer their questions or comply with their commands to open his door, turn off the truck's engine, and crack his window. He grabbed a canned beverage and took a drink, dripping it onto his shirt. Moala testified that, based on his training and experience, this was a possible sign of intoxication. Mitchell observed that Robinson's eyes were "bloodshot and watery," and his movements were "really, really lethargic." Additionally, Robinson kept insisting that he was on "private property," indicating that he was confused about where he was. These facts reinforced the officers' reasonable suspicion that Robinson was, had been, or soon would be engaged in criminal activity and justified his continued detention. *See York*, 342 S.W.3d at 537–38 (holding that reasonable suspicion was not negated, but was reinforced, by defendant's behavior, including fact that he was confused about his location).

14

Robinson further evinced that he was intoxicated to the degree that he might endanger himself or others by shifting his truck into reverse and ramming into Mitchell's patrol unit, then shifting into drive and speeding off, over the curb, after Moala had climbed inside the truck. And, once the officers had witnessed Robinson operate the truck, they could legally arrest him based on probable cause that he was driving while intoxicated. *See* Tex. Code Crim. Proc. Ann. art. 14.01 (authorizing peace officer to arrest offender without warrant for any offense committed in presence or within view of officer); Tex. Penal Code Ann. § 49.04(a) (stating that person commits offense of driving while intoxicated if he operates motor vehicle in public place while intoxicated). We overrule Robinson's first issue.

## B. The Jury Charge

In his second issue, Robinson argues that the trial court erred in refusing to give the jury a charge under Article 38.23 of the Texas Code of Criminal Procedure. The State responds that this issue is not preserved for our review and, alternatively, that the trial court did not err in denying Robinson's requested jury instruction because the evidence did not raise the issue.

The State's preservation argument is misplaced. We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*,

15

357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first

determine whether error occurred; if not, then our analysis ends. *Id.*[9]

Article 38.23(a) provides,

> No evidence obtained by an officer or other person in violation of any provisions of . . . the Constitution . . . shall be admitted in evidence against the accused on the trial of any criminal case.

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex. Code Crim. Proc. Ann. art. 38.23. To be entitled to an Article 38.23(a)

instruction, the defendant must show that (1) a party raised an issue of historical fact

in front of the jury, (2) a party contested the fact by affirmative evidence at trial, and

(3) the fact is material to the constitutional or statutory violation that the defendant

has identified as rendering the particular evidence inadmissible. *Robinson v. State*,

377 S.W.3d 712, 719 (Tex. Crim. App. 2012). Accordingly, although a fact issue on a

defensive theory may be raised "from any source, and the evidence may be strong,

weak, contradicted, unimpeached, or unbelievable," an Article 38.23 jury instruction

must be included in the jury charge only if there is a factual dispute about how the

---

[9] *Alcocer v. State*, 256 S.W.3d 398 (Tex. App.—San Antonio 2008, no pet.), the case on which the State relies in support of its preservation argument, was decided prior to *Kirsch*. In *Kirsch*, the Court of Criminal Appeals concluded that failure to preserve error is not a proper basis for a court of appeals to decline to address an appellate complaint of alleged error in the jury charge. 357 S.W.3d at 649.

evidence was obtained. *White v. State*, 201 S.W.3d 233, 248 (Tex. App.—Fort Worth 2006, pet. ref'd) (quoting *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004)).

Robinson's brief does not clearly articulate the exact factual dispute that he believes entitled him to an Article 38.23 instruction. He argues that "the jury should have been allowed to deliberate whether the officers were acting in good faith" and that "the record reflects two alternate and very different theories for the officers' arrival at the scene," which he claims "in of itself triggers the right to an Art. 38.23 instruction." In support of this argument, he directs us to the following language from the Court of Criminal Appeals' opinion in *Robinson*:

> And if there is a dispute about whether a police officer was genuinely mistaken, or was not telling the truth, about a material historical fact upon which his assertion of probable cause or reasonable suspicion hinges, an instruction under Article 38.23(a) would certainly be appropriate.

*Robinson*, 377 S.W.3d at 721. We have already concluded that the reasons for the officers' arrival at the QuikTrip were immaterial to the legality of Robinson's arrest. *See Ramirez-Tamayo*, 537 S.W.3d at 36 (explaining that the reasonable-suspicion standard "disregards the actual subjective intent of the arresting officer"). Therefore, Robinson has not pointed out any fact that is "material to the constitutional or statutory violation that [he] has identified as rendering the particular evidence inadmissible." *See Robinson*, 377 S.W.3d at 719. In other words, what Robinson calls the "miscommunication or misinformation" among Nick, the 911 dispatcher, and the police was not a "material historical fact" in this case.

17

Robinson's argument at trial was clearer. During the charge conference, defense counsel based his request for the Article 38.23 instruction on "the fact question of whether [Robinson appeared] intoxicated." He attempted to support his argument by telling the trial court, "Even at one point[,] when the State objected to my asking about him being asleep[,] you had told them in the objection that it is a fact issue whether somebody was passed out or asleep." The closest thing we can find in the record to what trial counsel was apparently referencing is this colloquy when Moala was on the witness stand:

[PROSECUTOR]: Judge, I'm gonna object to that question. The Defense is vacillating back and forth between the term asleep and passed out.

THE COURT: What's your objection?

[PROSECUTOR]: My objection is that it's assuming a fact that hasn't been proved.

THE COURT: Would you restate your last question.

[DEFENSE ATTORNEY]: Judge, my question was as he was there asleep in his truck he was no danger to himself.

[PROSECUTOR]: That's assuming a fact not in evidence.

THE COURT: That's a conclusion for the jury.

So new question, please.

[DEFENSE ATTORNEY]: So is it sustained?

THE COURT: He can answer the question. Go ahead, officer, and answer the question again.

A. (THE WITNESS) I'm sorry. Can you repeat that question again?

18

Q. Yeah. So as he was there asleep in his truck he presented no danger to himself, did he?

A. I disagree.

If the trial court had intended to rule that whether Robinson was asleep or passed out was a fact issue for the jury to resolve, then we need not review that ruling because Robinson has not made it an issue in his appeal, and in any event, the terms "passed out" and "asleep" are similar; the point is that Robinson was unconscious, and the jury saw a video of how he appeared and could draw its own conclusions. The only issue of historical fact to which Robinson has pointed that is material to how the challenged evidence was obtained is whether he appeared intoxicated. We have searched the record[10] to determine whether either party contested this fact by affirmative evidence at trial and have found the following excerpts pertinent to this issue:

> [PROSECUTOR:] [Once defendant was awake], did you notice any signs of intoxication?
>
> [MITCHELL:] His eyes were bloodshot and watery. His movements were really, really lethargic. The fact he was passed out and slumped over at the wheel was a hint that there could definitely be some intoxication. There was empty alcohol. There may have been a little bit

---

[10]In the argument on his second issue, Robinson contends that "[t]he defense had raised [this] issue in very clear terms," without providing any subsequent citations to the record. An appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations … to the record." Tex. R. App. P. 38.1(i). We have, in the past, dismissed arguments as inadequately briefed when an appellant has failed to cite the record. *See, e.g., Turro v. State*, 950 S.W.2d 390, 401 (Tex. App.—Fort Worth 1997, pet. ref'd).

of alcohol left in the Miller Lite -- not Miller Lite -- Steel Reserve bottle. So all of those things led me to believe that he was probably intoxicated.

. . . With the belief that he was probably intoxicated, we didn't want him to have the opportunity to drive off or walk off. . . .

. . . .

[DEFENSE ATTORNEY:] Okay. So let me go back to the call. The information you received just said a possibly intoxicated person, right?

[MITCHELL:] Uh-huh.

[DEFENSE ATTORNEY:] An older white male who was drinking a beer and appeared to be passed out. That's the information you got, right?

[MITCHELL:] Yes, according to the report.

[DEFENSE ATTORNEY:] Okay. And, again, that's what you say is accurate, right?

[MITCHELL:] Yes, sir.

[DEFENSE ATTORNEY:] Okay. But, again, dispatch didn't say intoxicated person, right?

[MITCHELL:] I don't know. I can't remember the exact words of what they said.

[DEFENSE ATTORNEY:] Okay. But that's why you detained Richard, right?

[MITCHELL:] Right.

. . . .

[DEFENSE ATTORNEY:] . . . But when we talk about passed out, that's somebody sleeping, right?

[MITCHELL:] Right. Unconscious.

[DEFENSE ATTORNEY:] Possibly unconscious, but just sleeping, right?

[MITCHELL:] Yes, sir.

[DEFENSE ATTORNEY:] In all of your years, you have come across sleeping persons several times, right?

[MITCHELL:] Uh-huh.

[DEFENSE ATTORNEY:] Some dealing with intoxication, some not?

[MITCHELL:] Correct.

. . . .

[DEFENSE ATTORNEY:] And other than him sleeping in the truck, you didn't see any other level of stress, right?

[MITCHELL:] No.

[DEFENSE ATTORNEY:] And so then just as he was asleep in the truck, he didn't present a danger to himself, right, just sleeping in his truck?

[MITCHELL:] Just based off of him being asleep?

[DEFENSE ATTORNEY:] Yes.

[MITCHELL:] Or being intoxicated and being asleep?

[DEFENSE ATTORNEY:] Being asleep in his truck.

[MITCHELL:] Just being asleep, no.

[DEFENSE ATTORNEY:] Right. Because when you approached, you had no idea whether he was intoxicated.

[MITCHELL:] Correct.

. . .

21

[MOALA:] And so when I got there, the call was supposed to be in regards to a white Ford pickup truck. I was looking for the white Ford pickup truck. And when I got there and saw a white Ford pickup truck, I saw -- I saw a subject in there who was slouched over which matched the description on the call. It was a subject possibly intoxicated.

. . . .

[PROSECUTOR:] Okay. And then based on your training and experience -- I know you're not an officer anymore, but it hasn't been that long. Based on your training and experience, is someone dripping a drink on their shirt a possible sign of intoxication?

[MOALA:] Oh, yes.

Based on this record, no evidence tends to show that Robinson did not appear intoxicated when the police detained him, and no evidence conflicts with the officers' testimony or the video showing how Robinson appeared at that moment. The officers' admissions that they did not know with certainty whether Robinson was intoxicated or not when they approached his vehicle is not affirmative evidence that Robinson *did not appear* intoxicated, which is what he needed to get his requested instruction. *See White v. State*, 549 S.W.3d 146, 154 n.21 (Tex. Crim. App. 2018) (stating that appellant did not establish that there was an issue of fact in dispute because he presented no evidence controverting the evidence presented by the State); *Madden v. State*, 242 S.W.3d 504, 515 (Tex. Crim. App. 2007) ("Appellant's questions on cross-examination cannot, by themselves, raise a disputed fact issue. There must be some affirmative evidence to raise a fact issue."); *Garza*, 126 S.W.3d at 86 ("Vague

suggestions by appellant's counsel that the officers were on a fishing expedition, without more, do not rise to the level of creating a fact issue.").

Because Robinson has not shown that the evidence raised a factual dispute that was material to how the evidence against him was obtained, the trial court did not err in refusing to give the jury an Article 38.23 charge. *Robinson*, 377 S.W.3d at 722; *Madden*, 242 S.W.3d at 518. We overrule Robinson's second issue.

## IV. CONCLUSION

Having overruled Robinson's issues, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 18, 2022